611 So.2d 927 (1992)
LEE COUNTY BOARD OF SUPERVISORS
v.
Margie Gail FORTUNE.
No. 90-IA-0717.
Supreme Court of Mississippi.
December 31, 1992.
*928 William M. Beasley, Mitchell Voge Beasley & Corban, Tupelo, for appellant.
Karla J. Pierce, Dale Hubbard, Ferrell & Hubbard, Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and PITTMAN and BANKS, JJ.
BANKS, Justice, for the Court:
Here we again treat the issue of sovereign immunity, this time, however, in light of our recent pronouncements in Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992). Having determined that we are free from a legislative attempt to freeze the common law as it existed prior to Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), we examine the situation here presented for determination of whether a permutation of the doctrine of sovereign immunity as it existed pre-Presley is in order.

I
This case is before this Court from an order granting certification for Interlocutory Appeal on June 27, 1990, to Lee County Board of Supervisors (Lee County) pursuant to Rule 5 of the Rules of the Mississippi Supreme Court. Lee County is appealing the circuit court's refusal to grant its Motion to Dismiss.
On December 27, 1989, Mrs. Margie Gail Fortune (Fortune) filed suit for the wrongful death of her husband and two children in the Circuit Court of Lee County against the Lee County Board of Supervisors and XYZ Construction Company, alleging negligence in the erection and maintenance of a bridge by failing to place warning signs/devices on the roads in Lee County, and failing to exercise reasonable care to keep the roads and bridges safe by providing adequate and necessary guardrails for bridges
Subsequently, on January 17, 1990, Lee County Board of Supervisors filed their Motion to Dismiss pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure on the basis that they are a political subdivision of Mississippi, and therefore, immune from liability.
The circuit court refused to grant Lee County's Motion to Dismiss. In its Opinion dated May 31, 1990, the court held that, if Lee County breached a duty placed upon it by Miss. Code Ann. § 65-21-1,[1] it cannot claim the benefit of sovereign immunity. On June 7, 1990, Lee County filed a request for interlocutory appeal, which was granted. Lee County presents one issue for review before this Court:

I. Whether the Lee County Board of Supervisors is immune from civil liability for damages alleged to have resulted *929 from their negligence in the construction and/or maintenance of a bridge on a county road.

In response, Fortune presents the following issues for review:
I. Whether a statutory mandate to the Lee County Board of Supervisors makes their performance ministerial rather than discretionary, thereby waiving their immunity from suit.
II. (In the event the acts of the Board are determined to be discretionary, which Fortune denies), whether the Board acted arbitrarily and capriciously thereby abusing its discretion and permitting the veil of immunity to be pierced.
III. Whether the Board of Supervisors should be held liable to members of the general public for failure to warn of and/or cure hazards which it has created.
IV. Whether the doctrine of sovereign immunity should be abolished.

II
On December 11, 1989, Fortune's husband, Steven, and her two minor children, Stephanie, age 7, and Steven Matthew, age 4, were killed when their vehicle dropped off a bridge on Lee County Road No. 681. Apparently, Mr. Fortune was attempting to move his vehicle to the right of the bridge to avoid collision with another car that was approaching the bridge at the same time as his vehicle. As he did so, the right wheels of his vehicle dropped from the bridge, causing his vehicle to flip and land in a creek below. He and the two children drowned.
There was an affidavit by Jimmy Jackson, who claimed that the bridge was extremely narrow and lacked bridge rails or warning signs to advise motorists. Mr. Jackson stated that he personally measured the bridge at the center and that it was less than 16 feet wide.[2] Jackson stated that he spoke with an engineer with Cook-Coggins Engineering Co., who told him that the bridge was constructed in 1956.[3]
Mr. William Jones, a resident of Lee County, also gave a sworn affidavit. He stated that he lived very close to the bridge and had been complaining about the bridge for years. He asserted that on many occasions he spoke with Al Rice, a member of the Lee Board of Supervisors. On one particular instance, he recommended to Rice that the county put banisters or guardrails on the bridge. He also recommended that the board post a sign on the bridge. Jones stated that Rice's response was "they'd just saw the posts off and throw them away. There is no way we could keep a banister." Jones asserted that he then suggested that the Board place steel posts on the bridge. To that, Rice asserted, "they'd just take some kind of tractor and pull them off." Jones said that he tried several times to no avail to have the Board place warning signs near the bridge informing drivers about the danger of the bridge.
There was also an affidavit by Albert Medina, a traffic accident consultant. He asserted that he investigated the accident scene on February 12, 1990. He reviewed the accident report, witnesses' statements, photographs, the bridge and Mississippi statutes. In his opinion, had there been guardrails on the bridge on the date of the accident, the accident would not have occurred. He stated that railings would have warned the on-coming drivers from both directions that there was a bridge at this location. Medina stated that the shoulders drop at the bridge, making it deceptive to approaching motorists. He also stated that the bridge was very narrow, measuring less than sixteen (16) feet wide; the approach to the bridge is wider which makes it deceptive because of the difficulty in identifying the bridge upon approach. Medina stated that the bridge is hazardous and constitutes an extreme danger to motorists *930 approaching from the north or south.

III
In Presley, we held the legislative reestablishment of sovereign immunity ineffective as violative of the constitutional prohibition against reviving laws by reference. We limited the effect of the statute to "immunizing the State from claims arising thereafter to the extent that this court would do so applying the evolving standards of common law" and provided that abolition of sovereign immunity there declared is fully retroactive for governmental entities having obtained liability insurance covering the incident in question, to the extent of such insurance. We remanded the Presley case for further consideration in light of our holding.
In the instant case, plaintiffs raise the issue whether certain statutory provisions are a basis for finding no immunity. Miss. Code Ann. § 19-13-51 (providing that the board of supervisors may pay certain claims in its discretion) and § 65-21-1 (directing boards of supervisors as to railings on bridges). Fortune also urges adoption of a modified view of the ministerial/discretionary distinction to be applied to find county liability for the acts of supervisors.
For the latter proposition, Fortune cites the Florida case of Bailey Drainage District v. Stark, 526 So.2d 678 (Fla. 1988), where that Court in response to a certified question explained the "created danger" doctrine as follows:
[o]nce a governmental entity creates a known dangerous condition which may not be readily apparent to one who could be injured by the condition, and the governmental entity has knowledge of the presence of people likely to be injured, then the governmental entity must take steps to avert the danger or properly warn persons who may be injured by that danger.
* * * * * *
We hold, however, and in response to the certified question, sovereign immunity does not bar an action against a governmental entity for rendering an intersection dangerous by reason of obstructions to visibility if the danger is hidden or presents a trap and governmental entity has knowledge of the danger but fails to warn motorists.
526 So.2d at 680-81, quoting in part, City of St. Petersburg v. Collom, 419 So.2d 1082, 1085 (Fla. 1982).
Fortune further cited Wright v. State, Dept. of Agriculture, 540 So.2d 830 (Fla. Dist. Ct. App., 1988), for the elements which would create a cause of action against the governmental body.[4] Florida's "created danger" doctrine operates on an operational/judgmental planning level distinction. Fortune argues the doctrine can apply equally to our ministerial/discretionary distinction. She urges that because Lee County constructed an extremely dangerous bridge and the board had actual knowledge of the hazardous condition of the bridge, it's duty to either warn of the hazard or take steps to avoid the danger is nothing less than ministerial.
We need not decide these issues. As we did in Presley, the proper course is to remand this case for further proceedings in light of our holding there. We therefore affirm the order of the circuit court denying defendants' motion to dismiss and remand this case to that court for further proceedings.
AFFIRMED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN and PITTMAN, JJ., concur.
*931 McRAE, J., concurs with separate written opinion.
ROBERTS, J., not participating.
McRAE, Justice, specially concurring:
While I concur with the majority's decision to remand the case and agree that the maintenance of bridges and warning signs apparently is a "ministerial" act, I write separately to adopt by reference the views expressed in my dissent in Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992).
In Presley, we decided that an act of failing to properly place a stop sign was negligence but that the Highway Commission was immune from suit. The majority abolished the doctrine of sovereign immunity doctrine by making it prospective rather than retroactive. The accident which killed Mattie Presley occurred on October 2, 1987. The act in the case sub judice occurred on December 11, 1989. Mrs. Fortune alleged that the county was negligent in the erection and maintenance of a bridge by failing to place warning signs/devices on the roads in Lee County and in failing to equip the bridge with guardrails as required by Miss. Code Ann. § 65-21-1 (1972). The majority found that the County had violated the statutory command and further, that this was a ministerial, not a discretionary act. What is the difference in the ministerial act of the county in this case and the negligent "ministerial act" of the Highway Commission in Presley of failing to place a stop sign where it could be seen?[1]
This case is a classic example of the apathetic attitude of public officials who, long having hidden behind the cloak of sovereign immunity, believe that they are covered by blanket immunity and are thus above both the law and the constitution. I commend the majority for having stopped vacillating. Accordingly, for the reasons I dissented in Presley, I concur in this case.
NOTES
[1] Miss. Code Ann. § 65-21-1 provides in part:

All culverts hereafter built, rebuilt, or placed in any public road in this state shall be not less than the full width of the crown of the roadway, and shall have guide or warning posts on either side. All bridges hereafter built, rebuilt, or placed in any public road of this state shall be built the full width of the crown of the roadway where the same is sixteen feet wide or less, and on roads having a greater width than sixteen feet the bridges shall be not less than sixteen feet wide; and all bridges hereafter built or rebuilt shall be built with banisters on either side.
[2] Mr. Jackson does not stated in his affidavit and the record is void as to why he measured the bridge.
[3] Other than this statement by Jackson, the record is void of any indication when the bridge was constructed.
[4] The elements are as follows:

(1) The government created a dangerous condition;
(2) The condition was not readily apparent to someone who could be injured thereby;
(3) The government had knowledge of the dangerous condition; and
(4) The government failed to take steps to warn the public of the danger or to avert the danger.
(other citations omitted)
[1] Miss. Code Ann. § 63-3-303 provides for the erection and maintenance of traffic devices as follows:

The commissioner of public safety and the state highway commission shall place and maintain such traffic control devices conforming to its manual and specifications, upon all state and county highways as it shall deem necessary to indicate and to carry out the provisions of this chapter or to regulate, warn or guide traffic.
No local authority shall place or maintain any traffic-control device upon any highway under the jurisdiction of the commissioner of public safety and the state highway commission except by the latter's permission.