## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-CA-00102-SCT

*MARGIE GAIL FORTUNE AS WRONGFUL DEATH
BENEFICIARY OF STEVEN LYNN FORTUNE*

*v.*

*LEE COUNTY BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/04/94 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | DALE HUBBARD |
| | CHARLES M. MERKEL, JR. |
| ATTORNEYS FOR APPELLEE: | WILLIAM M. BEASLEY |
| | LESLIE WILLIAM SMITH |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 4/23/98 |
| MOTION FOR REHEARING FILED: | 5/6/98 |
| MANDATE ISSUED: | 7/9/98 |

**EN BANC.**

**PRATHER, CHIEF JUSTICE, FOR THE COURT:**

### STATEMENT OF THE FACTS AND CASE

¶1. Maggie Fortune's husband, Steven Fortune, and their two young children, Stephanie and Steven Matthew, were killed on December 11, 1989, when the vehicle in which they were riding fell from a bridge without guardrails on County Road 681 in Saltillo, Mississippi. Mrs. Fortune filed suit against the Lee County Board of Supervisors and the XYZ Construction Company on December 27, 1989, alleging that the Board of Supervisors was negligent in failing to properly inspect, repair, erect and maintain guardrails on the bridge in question and in failing to warn of the bridge's hazards. The circuit court denied the County's motion to dismiss, finding that the Board of Supervisors did not enjoy the benefit of sovereign immunity that it claimed.

¶2. In its opinion denying the Board of Supervisor's motion to dismiss, the circuit court found that if

the Board violated the duty placed on it by Miss. Code Ann. § 65-21-1, governing the design and construction of bridges on public roads, it was not shielded from liability by sovereign immunity. *Lee County Bd. of Supervisors v. Fortune*, 611 So. 2d 927, 928 (Miss. 1992)(hereinafter *Fortune I*). This Court granted the Board's request for an interlocutory appeal on the question of its liability for negligence in the construction and/or maintenance of a bridge on a county road. (*Fortune I*, 611 So. 2d at 928).

¶3. While that case was pending, the sovereign immunity statute, Miss. Code Ann. § 11-46-6 (1986), was found to be unconstitutional (but only prospectively) in *Presley v. Mississippi State Highway Commission,* 608 So. 2d 1288 (Miss. 1992). In *Fortune I*, this Court affirmed the circuit court's denial of the Board's motion to dismiss, but declined to address the issues raised by the parties, stating:

> We need not decide these issues. As we did in *Presley*, the proper course is to remand this case for further proceedings in light of our holding there. We therefore affirm the order of the circuit court denying defendants' motion to dismiss and remand this case to that court for further proceedings.

*Fortune I,* 611 So. 2d at 930.

¶4. On remand, the Board filed a motion for summary judgment on November 17, 1993, asserting that Mrs. Fortune's claims were barred by the 1993 amendments to the State Tort Claims Act and arguing that *Presley* was inapplicable because the cause of action arose prior to the August, 1992 decision. The circuit court found, as a matter of law, that Fortune's claims were barred by Miss. Code Ann. § 11-46-1, et seq., as amended effective April 1, 1993, and granted the Board's motion for summary judgment on January 4, 1994. Fortune timely appealed to this Court.

## ARGUMENTS AND DISCUSSION OF THE LAW

### I. WHETHER THE AMENDED SOVEREIGN IMMUNITY STATUTE IS APPLICABLE TO THE CAUSE OF ACTION

#### A. WHETHER THE INTERLOCUTORY ORDER OF THE MISSISSIPPI SUPREME COURT IS A "FINAL JUDGMENT" WITHIN THE MEANING OF § 11-46-3(2)

¶5. The circuit court granted the Board of Supervisors' motion for summary judgment on grounds that suit against it was barred by the revised sovereign immunity statute. Miss. Code Ann. § 11-46-3 (Supp. 1997), as amended effective April 1, 1993, provides for the immunity of the state and its subdivisions as follows:

> (1) The Legislature of the State of Mississippi finds and determines as a matter of public policy and does hereby declare, provide, enact and reenact that the "state" and its "political subdivisions," as such terms are defined in Section 11-46-1, are not now, have never been and

shall not be liable, and are, always have been and shall continue to be immune from suit at law or in equity on account of any wrongful or tortious act or omission or breach of implied term or condition of any warranty or contract, including but not limited to libel, slander or defamation, by the state or its political subdivisions, or any such act, omission or breach by any employee of the state or its political subdivisions, notwithstanding that any such act, omission or breach constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature and notwithstanding that such act, omission or breach may or may not arise out of any activity, transaction or service for which any fee, charge, cost or other consideration was received or expected to be received in exchange therefor.

(2) The immunity of the state and its political subdivisions recognized and reenacted herein is and always has been the law in this state, before and after November 10, 1982, and before and after July 1, 1984, and is and has been in full force and effect in this state except only in the case of rights which, prior to the date of final passage hereof, have become vested by final judgment of a court of competent jurisdiction or by the express terms of any written contract or other instrument in writing.

Fortune contends that this Court's decision in *Fortune I* is a "final judgment" pursuant to § 11-46-3(2), making the revised statute inapplicable. The Board, on the other hand, argues that a decision in an interlocutory appeal is not a "final judgment" as contemplated by the statute.

A final judgment puts an end to the action, and disposes of the entire controversy, so that there is no further question for future determination by the court, except perhaps collateral or separate questions, and there is nothing left to be done but to enforce by execution what has been determined. A final decision generally is one which ends the litigation on the merits, and leaves nothing for the court to do but execute the judgment. . . . An interlocutory judgment, on the other hand, leaves for future determination an equity of the case, or some material question connected with it. A judgment is interlocutory, as opposed to final, only when something further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties. Accordingly, where further action of the court is necessary to give a complete adjudication upon the merits, the judgment under which the further question arises is to be regarded, not as final, but as interlocutory.

46 Am. Jur. 2d *Judgments* § 202 (1994). The decision in *Fortune I*, an interlocutory appeal, remanded the case to circuit court for further proceedings and thus, was not a final judgment either by definition or as contemplated by the statute. This point of error is without merit.

### B. WHETHER THE INTERLOCUTORY ORDER OF DECEMBER 31, 1992 CONSTITUTES THE LAW OF THE CASE WHICH THE LOWER COURT WAS BOUND TO FOLLOW.

¶6. In the alternative, Mrs. Fortune asserts that under the "law of the case" doctrine, the trial court was bound to follow this Court's ruling in *Fortune I*. This Court has explained the law of the case doctrine as follows:

The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Simpson v. State Farm Fire & Cas. Co.,* 564 So. 2d 1374, 1376 (Miss. 1990)(quoting *Mississippi College v. May*, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961)). "But if the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings, or findings, a prior decision is not conclusive upon questions presented on the subsequent appeal." *Continental Turpentine & Rosin Co. v. Gulf Naval Stores Co.*, 244 Miss. 465, 480, 142 So. 2d 200, 207 (1962) quoting 3 Am. Jr., *Appeal and Error*, Sec. 985, p. 541).

¶7. In the view of this Court, it is of no consequence to Fortune whether or not the law of the case doctrine applies to the present case, given that this Court in *Fortune I* merely remanded for proceedings consistent with *Presley*. The cause of action in the present case arose in 1989, and this Court's 1992 decision in *Presley,* declaring § 11-46-6 to be unconstitutional, is prospective only. This Court held in *Robinson v. Stewart*, 655 So.2d 866 (Miss. 1995) that:

What observers should note is our consistency in refusing to apply *Presley* retroactively, as opposed to the means in which we achieved our end. What we have stated indirectly we now say directly. *Presley* has no retroactive application.

*Robinson*, 655 So.2d at 868[(1)]. Thus, contrary to Fortune's arguments, *Presley* favors the position of the Board in the present case, and sovereign immunity applies to the present case through an application of § 11-46-6. See *Hord v. City of Yazoo City*, 702 So.2d 121 (Miss. 1997). This point of error is without merit.

### C. WHETHER THE AMENDED SOVEREIGN IMMUNITY STATUTE EXTENDS IMMUNITY TO ACTS OF A POLITICAL SUBDIVISION WHICH ARE ARBITRARY AND CAPRICIOUS

¶8. Fortune next asserts that the sovereign immunity statute, as amended, does not extend immunity to a political subdivision when its acts are arbitrary and capricious. Fortune relies on *Coplin v. Francis*, 631 So. 2d 752 (Miss. 1994) for the proposition that immunity does not attach when the "governmental entity" exceeds its statutory authority. However, in that case, the issue was whether Pete Francis, an individual supervisor, had exceeded his discretionary authority in deciding to rebuild a single lane bridge on a two lane road in his District. *Coplin*, 631 So. 2d at 755.

¶9. *Coplin* thus dealt with qualified immunity in the context of the liability of a supervisor sued in his

individual capacity. In *Mohundro v. Alcorn County*, 675 So.2d 848 (Miss. 1996), this Court held that Alcorn County and its Board of Supervisors enjoyed the protection of sovereign immunity and remanded solely for a determination of any possible liability on the part of an individual supervisor who, the record indicated, may have exceeded his statutory authority. *Mohundro*, 675 So.2d at 854. This Court determines that this Court's holding in *Coplin* should not be applied to the suit in the present case, which was filed against the Board of Supervisors as a whole, and not against any of the supervisors in their individual capacities. As in *Mohundro*, this Court determines that Lee County, acting through the Board of Supervisors, enjoys the protection of sovereign immunity in the present case. This point of error is overruled.

## II. WHETHER THE SOVEREIGN IMMUNITY STATUTE IS UNCONSTITUTIONAL

### A. WHETHER THE STATUTE VIOLATES THE SEPARATION OF POWERS DOCTRINE

¶10. Fortune next asserts that the amended sovereign immunity statute violates the separation of powers doctrine. She points to language in Miss. Code Ann. § 11-46-3(1) which provides that governmental entities "are not now, have never been and shall not be liable, and are, always have been, and shall continue to be immune from suit at law or in equity" and to § 11-46-3(2), which provides that immunity "is and always has been the law in this state, before and after November 10, 1982 and before and after July 1, 1984 . . ."

¶11. In *Presley*, this Court noted that:

> [i]n consonance with the spirit and intent of the foregoing constitutional provisions [Separation of powers], the courts of this state have uniformly held that the Legislature is without power to confer upon courts jurisdiction that is not given or authorized to be given them by the Constitution, and that the Legislature can impose no duties on the judiciary but such as are of a judicial character.

*Presley*, 608 So. 2d at 1295 (quoting *Galloway v. Truesdell*, 83 Nev. 13, 24, 422 P.2d 237, 245 (1967)(quoting *Frazier v. Moffatt*, 108 Cal. App. 2d 379, 239 P.2d 123 (1951))).

¶12. This Court in *Presley* found that the Legislature had overstepped its boundaries by directing courts to apply only that case law that existed on November 10, 1982, thus "freez[ing] in time and plac[ing] the common law as it existed at that particular moment, and tell[ing] the court this is the only substantive law it is to apply." *Id.* Unlike § 11-46-6, the amended statute neither freezes the law at any one moment in time nor mandates that this Court construe the common law in a particular way. Accordingly, this assignment of error is without merit.

### B. WHETHER THE STATUTE IS AN UNCONSTITUTIONAL RETROACTIVE LAW

¶13. Finally, Mrs. Fortune contends that the amended statute, effective April 1, 1993, is an "unconstitutional retroactive law." She asserts that application of the statute to the case *sub judice*

would deprive her of a "vested right." Most of the provisions of the Tort Claims Act are solely prospective in their application, but § 11-46-3 clearly contains language of a retroactive nature. This Court held in *Cole v. National Life Insurance Company*, 549 So.2d 1301, 1305 (Miss. 1989) that:

> [T]he legislative intent ... must be considered in terms of the following two accepted rules of statutory consideration: (1) It is well settled in Mississippi ` . . . that prospective operation only will prevail, unless a contrary intention is manifested by the clearest and most positive expression.' (citing *Mladinich v. Kohn*, 186 So.2d 481, 484 (Miss. 1996), and (2) [I]t is our duty to adopt a construction of the statutes which would purge the legislative purpose of any constitutional invalidity.. . . (citation omitted).

Thus, this Court has indicated that we will enforce a statute whose retroactivity is expressed with the "clearest and most positive expression" so long as the statute is not unconstitutional.

¶14. This Court considers it unnecessary to consider the constitutionality of the retroactive enforcement of Miss. Code Ann. § 11-46-3 in the present appeal, however, given that, as noted earlier, *Presley* is solely prospective in its application. Therefore, sovereign immunity applies to the 1989 accident through an application of Miss. Code Ann. § 11-46-6, and Lee County has no need to avail itself of the provisions of § 11-46-3. The ruling of the trial court is affirmed.

¶15. **JUDGMENT IS AFFIRMED.**

**BANKS, ROBERTS, SMITH AND MILLS, JJ., CONCUR. WALLER, J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN AND PITTMAN, P.JJ.**

**McRAE, JUSTICE, DISSENTING:**

¶16. I disagree with the majority's finding that Margie Fortune's claims against the Lee County Board of Supervisors from a cause of action accruing in 1989 are barred by the 1993 amendments to the Sovereign Immunity Act. Furthermore, in *Fortune I*, we affirmed the circuit court's finding that if the Board of Supervisors breached its duty in failing to comply with bridge standards set forth in Miss. Code Ann. § 65-21-1, it could not claim the benefit of sovereign immunity. I would find that the circuit court erred in ruling on the applicability of the 1993 amendments to Fortune's cause of action rather than following "the law of the case" set out in *Fortune I* and allowing for a determination of whether the Board had breached its statutory duties. Moreover, the record does not contain sufficient information to warrant the majority's finding that the Board as a whole, rather than an individual supervisor, did not breach its duty in failing to maintain the county's bridges in compliance with the statutory requirements. Summary judgment, therefore, was not appropriate in this case. Accordingly, I dissent.

I.

¶17. Both art. I, § 10 of the United States Constitution and art. III, § 16 of the Mississippi Constitution prohibit *ex post facto* laws. ***Stamper v. Edwards,*** 607 So. 2d 1141, 1148 (Miss. 1992). As this Court stated in ***State ex rel. Moore v. Molpus***, 578 So. 2d 624, 643 (Miss. 1991), "[w]e take it [as] an article of faith and law that *ex post facto* laws are bad practice." The circuit court's application of a statute effective April 1, 1993 to this case amounts to an impermissible *ex post facto* application of the law. The Fortune family was killed in 1989 and suit was filed within that year. A decision was entered by the lower court in 1990 finding that immunity was not applicable. That order resulted in the County's interlocutory appeal, and was affirmed and remanded for further proceedings by this Court in December 31, 1992. The County's 1993 motion for summary judgment was filed only after the Legislature's 1993 revision of the sovereign immunity statute, which reasonably could not have been anticipated by Mrs. Fortune when she filed suit in 1989 or by the circuit court when it denied the County's motion to dismiss in 1990, all prior to this Court's 1992 plurality decision in ***Presley v. Mississippi State Highway Commission,*** 608 So. 2d 1288 (Miss. 1992), which prompted the 1993 amendment to the statute. Miss. Code Ann. § 11-46-1 et seq., as amended effective April 3, 1993, therefore was not applicable to a cause of action arising in 1989. ***Wesley v. Mississippi Highway Comm'n,*** 857 F. Supp. 523, 527 (Miss. 1994)("Because the claims of the Plaintiffs in this action arose on April 4, 1991, post-***Pruett*** and pre-***Presley***, the provisions of the current Sovereign Immunity Act are not applicable in this case.").

¶18. The majority's decision further results in the application to this case of a law that does not pass constitutional muster. In ***Presley***, this Court found that the 1987 statute was unconstitutional. We have yet to make a determination whether the statute in effect at the time of the Fortunes' accident is constitutional. However, since the 1989 statute was identical in its attempt to revive pre-***Pruett*** sovereign immunity, it too should be found unconstitutional. **See Mississippi Transportation Comm'n v. Rector,** 663 So. 2d 601, 603 (Miss. 1995)(McRae, J., dissenting).

II.

¶19. In ***Lee County Board of Supervisors v. Fortune,*** 611 So. 2d 927, 928 (Miss. 1992)(***Fortune I***), the circuit court refused to grant the Board of Supervisors' Motion to Dismiss, finding that "if Lee County breached a duty placed upon it by Miss. Code Ann. § 65-21-1, it cannot claim the benefit of sovereign immunity." ***Fortune I***, 611 So.2d at 928 (footnote omitted). We affirmed "the order of the circuit court denying defendants' motion to dismiss and remand this case to that court for further proceedings." ***Id.*** at 930. Thus, the law of this case is that if the Board violated its duty to keep a bridge within its jurisdiction in compliance with statutory requirements, it cannot claim the protection of sovereign immunity.

¶20. Under the "law of the case" doctrine, the circuit court was bound to follow this Court's ruling in ***Fortune I***. As this Court has explained:

> The doctrine of the law of the case is similar to that of former adjudication, relates entirely to questions of law, and is confined in its operation to subsequent proceedings in the case. Whatever is once established as the controlling legal rule of decision, between the same parties in the same case, continues to be the law of the case, so long as there is a similarity of facts. This principle expresses the practice of courts generally to refuse to reopen what has previously

been decided. It is founded on public policy and the interests of orderly and consistent judicial procedure.

*Simpson v. State Farm Fire and Casualty Co.,* 564 So. 2d 1374, 1376 (Miss. 1990)(quoting *Mississippi College v. May*, 241 Miss. 359, 366, 128 So. 2d 557, 558 (1961)). "But if the facts are different, so that the principles of law announced on the first appeal are not applicable, as where there are material changes in the evidence, pleadings or findings, a prior decision is not conclusive upon questions presented on the subsequent appeal." *Continental Turpentine and Rosin Co. v. Gulf Naval Stores Co.*, 244 Miss. 465, 480, 142 So. 2d 200, 207 (1962). In the case *sub judice*, the facts have not changed, and from the evidence in the record, there were no material changes in the evidence or the pleadings to suggest that the law of the case doctrine should not be applicable. The circuit court should have followed this Court's directive in *Fortune I,* which affirmed its ruling that sovereign immunity was not applicable if the Board breached its statutory duty, and continued proceedings which addressed the issue of whether that duty was breached. The revised sovereign immunity statute, like its predecessor, was not applicable absent a determination by the finder of fact that there had been no breach of duty pursuant to our decision in *Fortune I*. To affirm the circuit court's ruling on remand, where this Court's directive was not followed, is to condone the waste of judicial resources as well as the needless outlay of legal fees by Fortune.

III.

¶21. I further disagree with the majority's "determination" that *Coplin v. Francis*, 631 So. 2d 752 (Miss. 1994)is inapplicable to the case *sub judice.* There is insufficient information in the record to support such a conclusion. In *Coplin,* this Court found that immunity does not attach when a "governmental entity" exceeds its statutory authority. The issue in that case was whether one of the supervisors, Pete Francis, acting in his capacity as a county supervisor, exceeded his discretionary authority in deciding to rebuild a single lane bridge on a two lane road in his District. *Coplin*, 631 So. 2d at 755. *See also Mohundro v. Alcorn County*, 675 So. 2d 848, 853 (Miss. 1996)(qualified immunity applicable only to public official's performance of discretionary duties). Finding, however, that bridge construction requirements were specified by statute, and thus, that decisions about them are ministerial, the *Coplin* Court found that Francis could not raise the shield of immunity. Had Mrs. Fortune brought suit against the individual supervisors in Lee County, her cause of action against them clearly would not be barred by sovereign immunity.

¶22. In *Mohundro,* this Court acknowledged that "[t]he law is not clear as to whether an individual supervisor has a ministerial duty or function to see to the repair and maintenance of the roads and bridges within his district or whether that duty is only one of the Board of Supervisors as a whole." *Id.* at 854. If the maintenance and repair of bridges in Lee County is solely under the aegis of the Board of Supervisors, rather than upon an individual supervisor, which cannot be discerned from the record now before this Court, then the Board, like an individual supervisor, cannot hide behind the guise of immunity in carrying out a ministerial duty, particularly if it has acted "with such gross neglect or callous indifference to the safety of [the claimant] and the public as a whole such that his conduct may be fairly described as constructively intentional." *Id.* (denying immunity to public official acting with gross negligence in performance of discretionary function). There simply is not enough information in the record for either this Court or the trial court to make a determination of whether the defense of sovereign immunity was even applicable.

IV.

¶23. Because the 1993 amendments to the Sovereign Immunity Act are not applicable to a cause of action accruing in 1989, I disagree with the majority's decision to affirm the lower court's award of summary judgment to the Lee County Board of Supervisors. I further would find that the lower court should have followed "the law of the case" in *Fortune I* rather than ruling on the applicability of subsequent amendments to the Sovereign Immunity Act. Finally, there is not sufficient information in the record for the majority to have made a determination that the Board, and not an individual supervisor, did not breach its duty in failing to maintain the county's bridges in compliance with the statutory requirements. Accordingly, I dissent.

**SULLIVAN AND PITTMAN, P.JJ., JOIN THIS OPINION.**


**BANKS, JUSTICE, OPINION ON MOTION FOR REHEARING:**

¶24. I would not grant rehearing. I write, however, to clarify my views on this matter.

¶25. In *Lee County Bd. of Supervisors v. Fortune I*, I wrote for the majority to remand because in my view there was room for an evolutionary change in sovereign immunity law which would accommodate a valid claim in their circumstance. I remain of that view. In the meantime, however, this Court has taken the firm position that the law of sovereign immunity will not be permitted to evolve in the post-*Pruett*, pre-*Presley* period. *Robinson v. Stewart*, 655 So. 2d 866 (Miss. 1995); *Mohundro v. Alcorn County*, 675 So. 2d 848 (Miss. 1996); *Hord v. City of Yazoo City*, 702 So. 2d 121 (Miss. 1997). Thus my concurrence in affirming is not based upon an application of Mississippi Code Ann. § 11-46-6 but rather on the law as announced by this Court declining to judicially declare additional circumstances deemed exceptions to the doctrine of sovereign immunity.

¶26. Additionally, this is not a proper case for application of a ministerial/discretionary dichotomy. There is no such dichotomy in the law of judge made sovereign immunity. That concept applies only to public official qualified immunity. *See, e.g., Mohundro,* 675 So. 2d at 853; *T.M. v. Noblitt,* 650 So. 2d 1340, 1342-43 (Miss. 1995); *Coplin v. Francis,* 631 So. 2d 752, 753-54 (Miss. 1994); *State of Mississippi for the Use and Benefit of Brazeale v. Lewis,* 498 So. 2d 321, 322 (Miss. 1986).

**PITTMAN, P.J., JOINS THIS OPINION.**

1. This Court has established a limited retroactivity for *Presley* to the extent that the State or its political subdivisions procured liability insurance. However, the Lee County Board of Supervisors did not have any liability insurance coverage applicable to the cause of action in the present case.