631 So.2d 752 (1994)
Donald COPLIN, Sandra Gilds, Don Coplin, Jr., Eric Coplin, Crystal Coplin and Kevin Gilds
v.
Delma (Pete) FRANCIS and District Five of Monroe County, Mississippi.
No. 90-CA-0705.
Supreme Court of Mississippi.
January 27, 1994.
*753 Jim Waide, Waide Law Office, Tupelo, for appellants.
John M. Creekmore, Amory, for appellees.
EN BANC.
HAWKINS, Chief Justice, for the Court:
This is an appeal by the Coplin family of a dismissal of their wrongful death action against Supervisor's District Five of Monroe County and Delma (Pete) Francis, its supervisor, for the wrongful death of Christopher Gilds. At issue is whether these defendants enjoy sovereign immunity for failure to maintain a county bridge. Finding the circuit court erred in its dismissal of the action against Francis, we reverse; otherwise, we affirm.

TRIAL PROCEEDINGS
On July 14, 1987, Donald Coplin and Sandra Gilds, on behalf of themselves as parents, and as next friend of their minor children, Don Coplin, Jr., Eric Coplin, Crystal Coplin and Kevin Gilds, filed a complaint against "District Five of Monroe County, Mississippi," and Supervisor Francis for the wrongful death of Christopher, the minor son of Donald and Sandra.[1]
The complaint alleged that on September 20, 1985, Sandra was driving a car in which Christopher was riding, and as she crossed a one-lane, unmarked bridge which had no side railings on it, obscured by grass, and with holes in it, she met head-on a car being driving by Debbie Cox, who was intoxicated and driving at an excessive rate of speed. In the resulting collision, the Gilds vehicle was knocked off the bridge and Christopher was killed.[2]
The complaint charged Francis with negligently permitting grass to grow along the bridge, failing to post warning signs and rails on the bridge, permitting holes in the bridge and maintaining a dangerously narrow bridge. The county district was charged with vicarious liability.
Interrogatories were filed and the deposition of Francis was taken. The defendants on September 19, 1988, moved for a Rule 12(b) M.R.C.P. dismissal, and the court on November 7, 1989, entered a summary judgment dismissing the complaint.

LAW
Generally we have found individual supervisors, as well as County Boards of Supervisors, to be immune from liability for injuries sustained as a result of the negligent maintenance of public roads. Webb v. County of Lincoln, 536 So.2d 1356, 1358-1360 (Miss. 1988); State of Mississippi for the Use and Benefit of Nelda Brazeale and Nelda Brazeale, Individually v. Richard A. Lewis, Individually, and United States Fidelity & Guaranty Co., 498 So.2d 321, 323-324 (Miss. 1986). However, as we stated in Grantham v. Dept. of Corrections, 522 So.2d 219 (Miss. 1988):
Our law thus directs that a government official has no immunity to a civil action for damages if his breach of a legal duty causes injury and (1) that duty is ministerial in nature, or (2) that duty involved the use of discretion and the governmental actor greatly or substantially exceeds his authority and in this course thereof causes harm or (3) the governmental actor commits an intentional tort.
Id. at 225. Thus, the threshold question in determining whether Francis is clothed with the qualified immunity afforded public officials is whether the construction and maintenance of the bridge upon which the accident occurred is a ministerial or a discretionary function.
We have frequently articulated the distinction between discretionary and ministerial duties, distinguishing between those actions which inherently require the exercise of individual judgment and those which are positively imposed by law. The classic definition of a ministerial function is found in Poyner v. *754 Gilmore, 171 Miss. 859, 158 So. 922 (1935), where it was stated that:
[t]he most important criterion, perhaps, is that [if] the duty is one which has been positively imposed by law and its performance required at a time and in a manner or upon conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial.
Poyner, 171 Miss. at 865, 158 So. at 923. See also Barrett v. Miller, 599 So.2d 559, 567 (Miss. 1992); McFadden v. State, 542 So.2d 871, 877 (Miss. 1989); Region VII, Mental Health v. Isaac, 523 So.2d 1013, 1017 (Miss. 1988).
Qualified immunity protects only those public officials engaged in discretionary decision-making. See, e.g., Davis v. Little, 362 So.2d 642 (Miss. 1978) (supervisor charged with negligence while driving county-owned pickup truck not immune as to the act of driving vehicle because it did not involve official discretionary decision-making process); Region VII, Mental Health v. Isaac, 523 So.2d 1013 (Miss. 1988) (Commissioners were acting in a discretionary capacity in establishing a supervised apartment program, and were therefore entitled to qualified immunity from liability for death of a client stabbed to death by his roommate).
Miss. Code Ann. § 65-21-1 (1972) provides specifically for the width of bridges and requires that they be equipped with guard rails. The statute reads in relevant part as follows:
All culverts hereafter built, rebuilt, or placed in any public road in this state shall be not less than the full width of the crown of the roadway, and shall have guide or warning posts on either side. All bridges hereafter built, rebuilt, or placed in any public road shall be built the full width of the crown of the roadway where the same is sixteen feet wide or less, and on roads having a greater width than sixteen feet the bridges shall be not less than sixteen feet wide; and all bridges hereafter built or rebuilt shall be built with banisters on either side. (emphasis added)
In Lee County Board of Supervisors v. Fortune, 611 So.2d 927 (Miss. 1992), while declining to answer the question of whether § 65-21-1 and § 19-13-51[3] provide a statutory basis for a finding of no immunity, we affirmed the Lee County Circuit Court's denial of the Board of Supervisor's motion to dismiss and remanded the case for further proceedings. Margie Fortune brought suit against the Board of Supervisors and XYZ Construction Company following the death of her husband and their two minor children in an accident which occurred on a county bridge. As in the case sub judice, the bridge was extremely narrow, had no guardrails and lacked warning signs.
We now resolve the questions regarding the applicability of ministerial/discretionary function dichotomy to the construction of bridges left unanswered in Fortune. Boards of supervisors are vested with full jurisdiction over the roads, bridges and ferries in their respective counties. Miss. Code Ann. § 19-3-41 (1972). We long have maintained that a county has no liability except as authorized by statute. Leflore County v. Big Sand Drainage District, 383 So.2d 501 (Miss. 1980). In Webb v. County of Lincoln, 536 So.2d 1356, 1359 (Miss. 1988) and State for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 323 (Miss. 1986), we recognized that Miss. Code Ann. § 19-13-51 partially abrogates the immunity of boards of supervisors in their capacity as "overseers" of a county's roads and bridges. However, in Lewis, we noted that the statute
does in fact, reinforce the discretionary-ministerial distinction by allowing the board as a whole the authority to make discretionary decisions with regard to the general condition and state of maintenance of county roads and bridges, thus leaving intact the board's qualified immunity for such decisions.
Id. at 323. In finding that road maintenance and repair are discretionary rather than ministerial functions, we stated in Lewis:
Assuming arguendo that an individual member of the board of supervisors has a *755 ministerial duty or function to maintain the roads of his district, we recognize that, for various reasons, at least some roads may be in a state of disrepair from time to time, particularly due to lack of funds, which would, of course, require that the main, heavily-traveled roads receive the supervisor's immediate attention. Certainly, making the determination as to which roads should be the better maintained under such conditions would be a discretionary matter with the individual member of the board, absent some personal tort committed by him.
Id. at 323.
In Lewis the plaintiff alleged that her injuries were caused by "numerous holes, indentations, and rough spots along the road which culminated in creating a hazardous condition." Id. at 321-322, and in Webb we relied on Lewis to find that the repair of a fallen stop sign, which the plaintiffs alleged caused the one-car accident in which they were injured, was also a discretionary function.[4]
In contrast to the road maintenance and repair issues discussed in Lewis and Webb, the construction of bridges is specified in Miss. Code Ann. § 65-21-1. The statute mandates that any bridge that is built or rebuilt "shall be the full width of the crown of the roadway where the same is sixteen feet wide or less, and on roads having a greater width than sixteen feet the bridges shall not be less than sixteen feet wide." Moreover, § 65-21-1 specifies that all such bridges shall have "banisters" on either side. We find that the statute gives the supervisor no discretion in meeting the minimum specifications for bridge construction. Any judgment and discretion comes into play only after the minimum standards have been met, such as deciding whether to build a wider bridge than mandated by the statute to accommodate a shoulder or determining the height of the requisite banisters or guardrails.
Assuming arguendo that the statute were construed to provide sufficient latitude so as to warrant a finding that the design and construction of bridges was a wholly discretionary function, there would remain a genuine issue of material fact regarding whether Francis exceeded his authority in deciding to rebuild a one-lane bridge on a two-lane road and whether adequate warning had been provided. Webb v. Jackson, 583 So.2d 946, 950 (Miss. 1991). See also Annotation, Liability, in motor vehicle-related cases, of governmental entity for injury or death resulting from design, construction, or failure to warn of narrow bridge, 2 ALR 4th 635 (1980 and Supp. 1992).
Having found that construction of county road bridges in accordance with the specifications mandated by § 65-21-1 is a ministerial function, we conclude that Francis cannot raise the shield of immunity. Accordingly, we reverse the judgment as to Francis.
As to Monroe County, we note that the accident occurred September 20, 1985, following the enactment of Ch. 474, Laws 1985, § 12, Miss. Code Ann. § 11-46-1, et seq. (Supp. 1985). Monroe County on that date enjoyed sovereign immunity. Presley v. Mississippi State Highway Commission, 608 So.2d 1288, 1300-1301 (Miss. 1992).[5]
We accordingly reverse and remand for proceedings consistent with this opinion as to Francis, and affirm as to Monroe County.
REVERSED AND REMANDED IN PART; AFFIRMED IN PART.
PRATHER, P.J., and PITTMAN, JAMES L. ROBERTS, Jr., and SMITH, JJ. concur.
BANKS, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J., and joined in part by McRAE, J.
McRAE, J., concurs in part and dissents in part with separate written opinion joined by DAN M. LEE, P.J., and SULLIVAN, J.
*756 BANKS, Justice, concurring in part, dissenting in part:
While I join the opinion of the majority with respect to the liability of defendant Francis, I write separately to disassociate with the advisory opinion with respect to a non-party, Monroe County.
While it is clear that District Five of Monroe County is not an entity capable of being sued, Monroe County is simply not before the Court and I would not decide the issue of its liability, vel non, for the reasons stated in Lee County v. Fortune, 611 So.2d 927, 930 (Miss. 1992).
I also take this opportunity to note my disagreement with the long-standing assertion, here repeated, that Section 19-13-51, Mississippi Code 1972 Annotated (Supp. 1993), is a partial abrogation of the doctrine of sovereign immunity. Majority opinion ante at p. 754, citing State for the Use and Benefit of Brazeale v. Lewis, 498 So.2d 321, 323 (Miss. 1986). This is not true in either fact or law. Section 19-13-51 provides that the board of supervisors may, in its discretion, pay property damages sustained by reason of latent defects in bridges the existence of which are of such duration that the failure to repair amounts to "gross carelessness." The key word is "discretion." That statute gives no claimant right to sue the county or collect any damages beyond those allowed by a vote of the Board of Supervisors in its sole discretion. This power granted to the county is in recognition of the fact that prior to that time and since, counties regularly sought legislative approval for the exercise of discretion to make such payments, as well as those for personal injury, on an individual basis. See, e.g., Local and Private Laws of the State of Mississippi, 1988, Chs. 835-855. The enactment of this statute merely replaced that awkward and time-consuming procedure with respect to these particular property damage claims.
DAN M. LEE, P.J., joins this opinion.
McRAE, J., joins in part.
McRAE, Justice, concurring in part, dissenting in part:
I agree with the majority's finding that County Supervisor Delma "Pete" Francis cannot raise the shield of public official immunity. However, the majority erroneously relies on Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992) to vest District Five of Monroe County with sovereign immunity. Accordingly, I dissent.
The construction of county road bridges, as specified by Miss. Code Ann. § 65-21-1, is a ministerial function delegated to county supervisors. In finding that Francis, in particular, had been involved in a ministerial rather than discretionary activity, the majority leaves out facts critical to arriving at that conclusion. Francis, the Monroe County Fifth District Supervisor since 1970, was responsible for maintaining the roads and bridges in his district. In his deposition, Francis stated that the bridge on which the accident occurred had been rebuilt in 1975.[1] He made the decision to rebuild it according to its original one-lane specifications. He admitted that there were no signs warning of the one-lane bridge posted at the time of the accident, offering the excuse that people kept stealing them and that the district had run out of signs. Further, it was Francis who made the decision to install "grader blades" painted with reflective paint at the end of the bridge instead of warning signs. He did not know what policies the other supervisors followed.
The facts in this case are tragically similar to those in Lee County Board of Supervisors v. Fortune, 611 So.2d 927 (Miss. 1992). However, the accident which killed members of the Fortune family occurred on December 11, 1989; Christopher Gilds was killed on September 20, 1985. Because of the selective prospectivity spawned by this Court's decision in Presley, these dates are particularly significant. Margie Fortune has a cause of action against the Lee County Board of Supervisors. The Coplin's action against *757 District Five of Monroe County, however, is barred by sovereign immunity.
In Presley, the majority voted to apply prospectively its decision that the Sovereign Immunity Act and its predecessors were unconstitutional. 608 So.2d at 1298-1301. For the reasons I disagreed with the Presley opinion, I dissent today. In Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982), we abolished sovereign immunity prospectively. How many more shots must we give the legislature to follow our directive at the expense of the citizenry?
Generally, judicial decisions apply retroactively, not prospectively. James B. Beam Distilling Co. v. Georgia, 501 U.S. 529, ___, 111 S.Ct. 2439, 2443, 115 L.Ed.2d 481, 488 (1991); Solem v. Stumes, 465 U.S. 638, 641-42, 104 S.Ct. 1338, 1341, 79 L.Ed.2d 579 (1984). In Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), this Court recognized that:
It is a general rule that judicially enunciated rules of law are applied retroactively. Legislation applies prospectively only, and we are not thought to be in the business of legislating. Rather, our function is to decide cases justly in accordance with sound legal principles which of necessity must be formulated, articulated and applied consistent with the facts of the case.
Hilbun, 466 So.2d at 876.
Recently, the United States Supreme Court revisited the issue of whether a court's decision should be applied either prospectively or retroactively. It held that when the Court applies a rule of federal law to the parties before it, all courts are required likewise to give retroactive effect to the decision. Harper v. Virginia Department of Taxation, 509 U.S. ___, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). Retrospective relief has been recognized as the general rule of construction both in common law and in the decisions of the United States Supreme Court. In 1965, however, the Court opened the door to debate in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), by providing for the denial of retroactive application of newly announced rules in criminal cases according to the purpose of the rule, reliance on the previous law and "the effect on the administration of justice of a retroactive application" of the new rule. Linkletter, 381 U.S. at 636, 85 S.Ct. at 1731, 14 L.Ed.2d at 601. The availability of prospective relief was extended to the civil context in those cases where retroactive application of a new principle of law would cause "injustice or hardship," and as long as the "purpose and effect" of the new law was not unduly undermined. Chevron Oil Co. v. Huson, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971).
Recognizing that "selective application of new rules violates the principle of treating similarly situated [parties] the same," the Court overruled Linkletter in Griffith v. Kentucky, 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). It further reasoned that the very nature of judicial review precludes the Court from legislating: that is, using its prerogative to decide when and when not to make laws either prospective or retroactive. Id. In a footnote which led to a series of divided decisions, however, the Griffith Court indicated that "civil retroactivity ... continue[d] to be governed by the standard announced in Chevron Oil." Harper, 509 U.S. at ___, 113 S.Ct. at 2516-17, 125 L.Ed.2d at 85, quoting Griffith, 479 U.S. at 322, n. 8, 107 S.Ct. at 713 n. 8. In Beam, members of the Court expressed a variety of opinions all heralding a return to retroactive application of the law in civil cases. In Harper, the Court all but eviscerated Chevron, stating:

Beam controls this case, and we accordingly adopt a rule that fairly reflects the position of a majority of Justices in Beam: When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule. This rule extends Griffith's ban against "selective application of new rules." 479 U.S., at 323, 93 L.Ed.2d 649, 107 S.Ct. 708 [at 713]. Mindful of the "basic norms of constitutional adjudication" that animated our view of retroactivity in the criminal context, id., at 322, 93 L.Ed.2d 649, 107 S.Ct. 708 [at 713], we now prohibit the *758 erection of selective temporal barriers to the application of federal law in noncriminal cases. In both civil and criminal cases, we can scarcely permit "the substantive law [to] shift and spring" according to "the particular equities of [individual parties'] claims" of actual reliance on an old rule and of harm from a retroactive application of the new rule. Beam, supra, [501 U.S.] at ___, 115 L.Ed.2d 481, 111 S.Ct. 2439 [at 2440] (opinion of Souter, J.). Our approach to retroactivity heeds the admonition that "[t]he Court has no more constitutional authority in civil cases than in criminal cases to disregard current law or to treat similarly situated litigants differently." American Trucking [Associations, Inc. v. Smith], supra, [496 U.S. 167] at 214, 110 L.Ed.2d 148, 110 S.Ct. 2323 [at 2350] (Stevens, J., dissenting).
509 U.S. at ___, 113 S.Ct. at 2517-18, 125 L.Ed.2d at 86 (emphasis added).
In his concurring opinion, Justice Scalia observed that during the twenty year reign of unbridled prospectivity, "this Court cast overboard numerous settled decisions, and indeed even whole areas of law, with an unceremonious `heave-ho.'" Harper, 509 U.S. at ___, 113 S.Ct. at 2523-24, 125 L.Ed.2d at 94. He lamented its complete contradiction of the principle of stare decisis. Noting that prospective decisionmaking has been viewed as a "practical tool of judicial activism, born out of disregard for stare decisis" which "encroach[ed] on the prerogatives of the legislative department of the government," Justice Scalia wrote:
Prospective decisionmaking is the hand-maid of judicial activism, and the born enemy of stare decisis. It was formulated in the heyday of legal realism and promoted as a "techniqu[e] of judicial lawmaking" in general, and more specifically as a means of making it easier to overrule prior precedent. B. Levy, Realist Jurisprudence and Prospective Overruling, 109 U.Pa.L.Rev. 1 (1960). Thus, the dissent is saying, in effect, that stare decisis demands the preservation of methods of destroying stare decisis recently invented in violation of stare decisis.
509 U.S. at ___, 113 S.Ct. at 2522, 125 L.Ed.2d at 92 (emphasis added).
The responsibility and duty of our courts is to say what the law is  not what the law shall be. Fully retroactive decisions distinguish the judiciary from the legislative branch of our government. Indeed, it has been said that what distinguishes judicial from legislative acts is that one is a determination of the existing law with respect to something that has already been done, while the other is a predetermination of what the law shall be in future cases.
The United States Supreme Court long followed the Blackstonian idea of applying its decisions retroactively. With the advent of judicial activism, the Warren Court embraced the notion of prospectivity. This Court followed suit. In Harper, the United States Supreme Court recognized the error of its ways. Perhaps the time again has come to follow its lead. Accordingly, while I agree with the majority that Francis cannot hide behind the shield of public official immunity, I dissent from its holding that District Five of Monroe County is protected by sovereign immunity.
DAN M. LEE, P.J., and SULLIVAN, J., join this opinion.
NOTES
[1] The record does not give the age of the deceased child, or how the names got to be "Coplin" and "Gilds."
[2] Cox, originally named as a defendant, was dismissed by settlement.
[3] Miss. Code Ann. § 19-13-51 (1972) authorizes Boards of Supervisors to pay certain claims for injuries sustained as the result of defective bridges, causeways and culverts.
[4] But see Presley v. Mississippi State Highway Commission, 608 So.2d 1288 (Miss. 1992).
[5] The complaint in this case was not against Monroe County, but "District Five of Monroe County," which arguably is not subject to suit as such in this action. Because we hold Monroe County enjoys sovereign immunity, however, we need not engage in this abstract inquiry.
[1] Statutory standards for bridge construction are not a recent innovation. § 65-21-1 originated with the Code of 1930.