## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 96-CA-00642-SCT

*JIMMY JACKSON, ON BEHALF OF THE WRONGFUL DEATH HEIRS OF BRYAN WADE JACKSON*

*v.*

*LEONARD RALPH DALEY, SR., CHARLES RALPH SMITH, HORACE G. DYESS, S.J. GARNER, JEFFERSON DAVIS COUNTY, MISSISSIPPI AND UNITED STATES FIDELITY AND GUARANTY COMPANY*

### ON MOTION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/1996 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | JEFFERSON DAVIS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JOSEPH E. ROBERTS, JR. |
| ATTORNEY FOR APPELLEES: | S. WAYNE EASTERLING |
| NATURE OF THE CASE: | CIVIL - PERSONAL INJURY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 06/03/1999 |
| MOTION FOR REHEARING FILED: | 12/17/1998 |
| MANDATE ISSUED: | 6/10/99 |

**EN BANC.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. The motion for rehearing is granted, the original opinions are withdrawn, and this opinion is substituted therefor.

### STATEMENT OF THE CASE

¶2. Jimmy Jackson filed a wrongful death action against Jefferson Davis County for the death of his son, Bryan Wade Jackson. The County and individual defendants filed a motion for summary judgment based on the doctrine of sovereign immunity. On January 14, 1994, the plaintiff filed a motion to amend his complaint to include an additional defendant, United States Fidelity & Guaranty Company (U.S.F.&G.), under Rules 19 and 20 to determine the applicability of the County's U.S.F.&G. policy to the accident in question. The trial court granted this motion "to join United States Fidelity and Guaranty Company as a

party Defendant and to assert a Declaratory Judgment action against that insurance company as an additional Defendant." U.S.F.&G. then filed a motion to dismiss under Rule 12(b)(6), which motion was denied. On March 20, 1995, the trial court granted the individual defendants' motion for summary judgment, but held the County's motion for summary judgment in abeyance until determination of any applicable insurance coverage. The plaintiff then filed a motion on October 27, 1995, to name U.S.F.&G. as a real party in interest under Rule 17, because the only other remaining defendant, the County, was kept in the lawsuit based solely upon the U.S.F.&G. policy. The trial court denied this motion. On May 1, 1996, the jury entered a verdict for the defendants. Aggrieved, the plaintiff appeals and assigns the following issues as error:

**I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER BRYAN WADE JACKSON'S BLOOD AND URINE SAMPLES FROM PUCKET LABORATORIES?**

**II. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION NUMBER 12?**

**III. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION NUMBER 11?**

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO NAME U.S.F.&G. AS A PARTY AND IN OVERRULING THE PLAINTIFF'S OBJECTIONS TO THE DEFENSE COUNSEL COMMENTING IN HIS CLOSING ARGUMENT THAT JEFFERSON DAVIS COUNTY WOULD HAVE TO PAY THE VERDICT?**

**V. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?**

¶3. On cross appeal, U.S.F.&G. raises the following issue as error:

**I. DID THE TRIAL COURT ERR IN HOLDING THAT JEFFERSON DAVIS COUNTY'S POLICY WITH U.S.F.&G. PROVIDED COVERAGE FOR THE ACCIDENT THAT CAUSED BRYAN WADE JACKSON'S DEATH?**

## STATEMENT OF THE FACTS

¶4. On August 15, 1989, Bryan Wade Jackson was returning home in a northerly direction on a county road, shortly after midnight, when he had an automobile accident which resulted in his death. His body was found at 7:00 a.m. the next morning under his overturned vehicle. The scene of the accident was a one-lane gravel road maintained by Jefferson Davis County. Physical signs at the scene of the accident indicate that Jackson's car struck a pine tree, bounced off the tree back into the county road, and overturned, pinning Jackson under the car.

¶5. Prior to the accident, the county had dumped three piles of dirt on the west side of the road. The piles of dirt were a few feet high and sloped so that a small amount of the dirt extended into the left tire track for a north-bound vehicle such as that driven by Jackson. The appellant contends that Jackson's accident was caused by Jackson striking one of the piles of dirt or attempting to avoid the piles of dirt.

## I. WHETHER THE TRIAL COURT ERRED IN ALLOWING THE JURY TO CONSIDER JACKSON'S BLOOD AND URINE SAMPLES FROM PUCKET LABORATORIES.

¶6. Trial evidence established that Jackson's urine tested positive for alcohol and that his blood alcohol level was 0.17%. The appellant claims that the blood and urine results are the only evidence that the defendant was intoxicated and that this evidence should not have been presented to the jury.

¶7. In addition to the blood and urine samples, however, three witnesses, Deputy Thomas Earl Stevens, Joanna Pierce, and John Paul Kirby, presented testimony indicating that Jackson had been drinking on the night of the accident. Deputy Thomas Earl Stevens was the officer investigating the scene, and he testified that he found empty beer cans around the scene as well as in the cab of the truck. Pierce testified that she had seen Jackson drinking a beer between 7:00 and 8:00 on the evening of the accident. Kirby testified that he was with Jackson from 6:30 to 10:30 and that they were drinking beer during that time. Clearly, the blood and urine samples are not the only indication that Jackson was intoxicated at the time of the accident.

¶8. The appellant objects to the blood and urine samples on the basis that no documentary evidence as to the source of the blood and urine samples exists other than the reports that were returned to the Circuit Clerk of Jefferson Davis County. He claims that Jackson's blood and urine samples were destroyed by the laboratories. He also contends that the chain of custody was broken and that the blood and urine samples should therefore not have been admitted into evidence.

¶9. We usually defer to the trial court's determination of whether authorities have maintained the chain of custody of evidence. *Nix v. State*, 276 So. 2d 652, 653 (Miss. 1973). When reviewing the chain of custody, we will not disturb the finding of the trial court unless there has been an abuse of discretion. *Nalls v. State*, 651 So. 2d 1074, 1077 (Miss. 1995) (*citing Morris v. State*, 436 So. 2d 1381 (Miss.1983)). The test to determine whether there has been a break in the chain of custody is whether there is evidence of probable tampering. *Nix,* 276 So. 2d at 653. The record in this case does not reflect that Jackson's blood and urine samples were tampered with in any way.

¶10. Officer Thomas Earl Stevens was the first official to arrive at the scene of the accident. He testified that when he saw evidence that Jackson had been drinking he ordered that an alcohol test be performed on Jackson's body. He then witnessed the deputy coroner draw the blood and urine from the body of the deceased. He also watched as the deputy coroner, Greg Blackwell, packaged and sealed the samples.

¶11. The coroner, Joe Hutchins, testified that the deputy coroner acted under his supervision and in accordance with the standard procedures in their office. After the samples were drawn, they were taken to the hospital in Prentiss, where they were picked up by the testing facility, Pucket Laboratories. Following standard procedure, Pucket Laboratories sent the coroner's office a copy of the results of the tests. Hutchins then recorded these results in his official records.

¶12. Greg Blackwell, the deputy coroner, was trained by the Mississippi Crime Laboratory in the correct procedure for taking blood and urine samples. He described the protocol and testified that he followed the proper procedure in drawing and packaging Jackson's samples and sending them to the testing laboratory. The appellant attempted to discredit Blackwell's testimony by eliciting on cross-examination that he did not specifically remember taking the blood and urine from Jackson's body and that he did not specifically

remember filling out the form that accompanied Jackson's samples. The fact that Blackwell did not remember every single detail about a test he conducted six years ago does not convince this Court that the chain of custody was broken. Blackwell testified that he did remember working with Jackson's body and that the correct procedure was followed.

¶13. Finally, the defendants below presented the deposition of Tom Pittman, the head of Pucket Laboratories. In his deposition, Pittman identified the report concerning the testing results and stated that these results were sent to the Jefferson Davis County Clerk's Office pursuant to standard office procedure.

¶14. The record establishes that the chain of custody was not broken. We have held that Mississippi Rule of Evidence 401 allows for the admission of blood alcohol test results into evidence. **_Whitehurst v. State_**, 540 So. 2d 1319, 1323-24 (Miss. 1989). In this case, the issue of alcohol consumption is relevant. Therefore, the trial court did not err in admitting the test results from Jackson's blood and urine into evidence.

## II. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION NUMBER 12?

¶15. The appellant also contends that the trial court erred in allowing Jury Instruction 12, which read:

> The Court instructs the jury that it is violation of the law for one to operate a motor vehicle while under the influence of intoxicating liquor. The Court further instructs the jury that one is under the influence of intoxicating liquor when the amount of alcohol in the blood exceeds 0.10 percent. The Court further instructs the jury that, if you find from a preponderance of the evidence that the Plaintiff's deceased was operating his motor vehicle at the time when he was under the influence of intoxicating liquor as defined in these instructions, then such conduct, if you so find, constituted negligence per se. The Court further instructs the jury that, if you find from a preponderance of the evidence that said negligence, if any, was the sole proximate cause of the accident, then it is your sworn duty to find for the defendant.

The appellant maintains that this instruction misstated the law because it instructed the jury that one is under the influence of intoxicating liquors if the amount of alcohol in the blood exceeds 0.10%. The appellant notes that, while Miss. Code Ann. § 63-11-30 (1996) makes it illegal to drive with a blood alcohol level of 0.10% or above, the statute does not state that a person with this blood alcohol level is intoxicated. Thus, he argues that the trial court erred in permitting an instruction that informed the jury that a person was under the influence of intoxicating liquor if his blood alcohol level exceeded 0.10%.

¶16. As enacted by 1989 Miss. Laws ch. 565, § 1, and in effect on August 15, 1989, section 63-11-30 reads in pertinent part:

> It is unlawful for any person to drive or otherwise operate a vehicle within this state who (a) is under the influence of intoxicating liquor; (b) is under the influence of any other substance which has impaired such person's ability to operate a motor vehicle; or (c) has ten one-hundredths percent (.10%) or more by weight volume of alcohol in the person's blood based upon milligrams of alcohol per one hundred (100) cubic centimeters of blood as shown by a chemical analysis of such person's breath, blood, or urine administered as authorized by this chapter.

Miss. Code Ann. § 63-11-30(1) (1989).

¶17. This statute mandates that driving with a blood alcohol content of 0.10% or more is a per se violation of the law. Although the wording of Jury Instruction 12 incorrectly correlates 0.10% with intoxication, the bottom line is that the decedent committed a per se violation of the statute. We have held that when an injury results from a party violating a statute, and the injured party was in the category of persons the statute was designed to protect, then the negligence of the party violating the statute is established as a matter of law. *Thomas v. McDonald*, 667 So. 2d 594, 596 (Miss. 1995); *McRee v. Raney*, 493 So. 2d 1299, 1300 (Miss. 1986); *Stong v. Freeman Truck Line Inc.*, 456 So. 2d 698 (Miss. 1984). When a party is negligent as a matter of law, the trial court must so instruct the jury. *McRee,* 493 So. 2d at 1300. Failure to instruct the jury of negligence as a matter of law is reversible error. *McRee*, 493 So. 2d at 1300. Here, Jury Instruction 12 required that if the jury found by a preponderance of the evidence that Jackson violated the statute, then they must find that he was negligent. Thus, Jury Instruction 12 met the *McRee* standard of informing the jury that if they found that Jackson violated § 63-11-30 by driving with a blood alcohol level of 0.10% or higher, then he was negligent as a matter of law. Jury Instruction 12 correctly informed the jury that if they found that this violation of the statute was the sole and proximate cause of the accident, then it was the jury's duty to find for the defendant. Accordingly, we find that the instruction was sufficient despite the fact that it contained inaccurate language.

¶18. The appellant also objects to Jury Instruction 12 claiming that there is no credible evidence that Jackson was intoxicated. As previously stated, the record is replete with evidence that Jackson was under the influence of intoxicating liquors. Thus, this contention is without merit.

## III. WHETHER THE TRIAL COURT ERRED IN GRANTING JURY INSTRUCTION NUMBER 11?

¶19. Next, the appellant asserts that the trial court erred in granting Jury Instruction 11 on the grounds that it was cumulative with other instructions granted and improperly directed the jury's attention to the defendant's theory of the case. Instruction 11 reads:

> The Court instructs the jury that, if you find from a preponderance of the evidence that the plaintiff's deceased at the time of the accident, was driving his automobile at a greater rate of speed that would permit him to avoid striking objects when they came into range of the lights of his vehicle, then in such event the plaintiff's deceased was guilty of negligence; and if you further find from a preponderance of the evidence that such failure, if you so find was the sole and proximate cause of the accident, then it is your sworn duty to find for the defendant.

This instruction informed the jury of the well established rule that a motorist is negligent if he operates a vehicle at such a speed that it cannot be stopped within the range of the driver's vision. *Hood v. Oakley*, 519 So. 2d 1236, 1240 (Miss. 1988) (*citing Butler v. Chrestman*, 264 So. 2d 812, 815 (Miss. 1972)). "The 'range of vision' rule is to be applied according to the facts and circumstances of the individual case." *Hood*, 519 So. 2d at 1240 *(citing Huff v. Boyd*, 242 So. 2d 698 (Miss. 1971)). Here, Jury Instruction 11 enlightened the jury about the "range of vision" rule, so that the jurors could apply it to the facts and circumstances of the case.

¶20. The appellant contends that Jury Instruction 11 was similar to Jury Instruction 13 and that the trial court should not have granted both. Jury Instruction 13 stated:

The Court instructs the jury that if you find from a preponderance of the testimony that the Plaintiff was not driving his vehicle at a reasonable speed in view of existing conditions, or did not maintain proper control of his vehicle, or failed to maintain a proper lookout in view of existing conditions, then such failure, if any, constituted negligence. The Court further instructs the jury that if said failure, if any, was the sole proximate cause of the accident, it is your sworn duty to find for the defendant.

¶21. When reviewing jury instructions we will review all of the instructions together, rather than each isolated instruction. *Hull v. State*, 687 So. 2d 708, 722 (Miss. 1996). We have held that refusal of a repetitive jury instruction is not error. *Allman v. State*, 571 So. 2d 244, 252 (Miss. 1990); *Hood v. Oakley*, 519 So. 2d at 1240. The appellant argues transversely that granting repetitive jury instructions is reversible error. This is not necessarily the case. In *Wall v. State*, 413 So. 2d 1014, 1015 (Miss. 1982), we found that one repetitive, abstract jury instruction was not enough to mislead the jury; however, we did advise against adding surplus and repetitive instructions.

¶22. While Jury Instructions 11 and 13 are similar, each presents a different defense. Instruction 11 presents the defense that if Jackson violated the "range of vision" rule, then he was negligent. Jury Instruction 13 does not address the "range of vision" rule, but rather is a general negligence instruction listing ways in which Jackson might have been negligent. Instruction 13 informs the jury that Jackson was negligent if he did not maintain a reasonable speed, proper control of his vehicle, or a proper lookout. A jury could find that Jackson did not violate the "range of vision" rule, yet was still negligent according to the elements in Instruction 13. We do not believe that the challenged instruction misled the jury or improperly focused on the defendant's theory of the case. The trial court afforded the plaintiff the same opportunity to show different ways in which Jefferson Davis County might be negligent in Jury Instructions 6 and 7. After reviewing the record and the jury instructions in their entirety, we find that the trial court did not err in allowing Jury Instruction 11 and Jury Instruction 13.

**IV. WHETHER THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO NAME U.S.F.&G. AS A PARTY AND IN OVERRULING THE PLAINTIFF'S OBJECTION TO THE DEFENSE COUNSEL COMMENTING IN HIS CLOSING ARGUMENT THAT JEFFERSON DAVIS COUNTY WOULD HAVE TO PAY THE VERDICT.**

**A. WHETHER THE TRIAL COURT ERRED IN DENYING PLAINTIFF'S MOTION TO NAME U.S.F.&G. AS A PARTY.**

¶23. The appellant argues that the trial court erred in not allowing U.S.F.&G. to be named as a party. The appellant claims that, because the trial court had determined that Jefferson Davis County could not be liable, due to sovereign immunity, U.S.F. &G. was the only party that had an interest in the outcome, and therefore, should be named as a party. At the time of the trial judge's ruling, our precedent clearly prohibited direct actions against insurance companies by third parties. *Westmoreland v. Raper*, 511 So. 2d 884, 885 (Miss. 1987); *Smith v. City of West Point*, 475 So. 2d 816, 819 (Miss. 1985). In *State Farm Mut. Auto. Ins. Co. v. Eakins*, No. 96-CT-00034-SCT, 1998 WL 852920, *3 (Miss. Dec. 10, 1998), we overruled the line of cases, including *Westmoreland*, which prohibited direct actions against insurance companies. In their place, we held that under Rule 57 of the Mississippi Rules of Civil Procedure, an insurance company may be named as a party to an action for the purpose of seeking declaratory judgment on the question of coverage. *Id*. In the current case, the trial court allowed U.S.F.&G. to be named as a party ". . .to assert a Declaratory Judgment action against that insurance company as an

additional Defendant," but denied the plaintiff's motion to name U.S.F.&G. as a real party in interest under Rule 17. The trial court did not have the benefit of the *Eakins* decision before it. Nonetheless, the trial court satisfied the *Eakins* theory of declaratory judgment in this case.

¶24. Further, then existent Miss. Code Ann. § 19-7-8 directed that no attempt shall be made at the trial of this case to suggest the existence of any insurance which would cover in whole or in part any judgment awarded the plaintiff. Obviously, naming U.S.F.&G. as the real party in interest would conflict with that statutory directive. Thus, this assignment of error is without merit.

### B. WHETHER THE TRIAL COURT ERRED IN OVERRULING PLAINTIFF'S OBJECTION TO THE DEFENSE COUNSEL COMMENTING IN HIS CLOSING ARGUMENT THAT JEFFERSON DAVIS COUNTY WOULD HAVE TO PAY THE VERDICT.

¶25. The appellant's next assignment of error is that in his closing argument, Easterling, the defense counsel, improperly implied that Jefferson Davis County was not insured and would have to pay the verdict. The appellant maintains that the trial court erred in failing to overrule his objection to this statement. The comment the appellant refers to was Easterling's statement, "But we're talking about Jefferson Davis County being required to pay money. And that is not proper." The appellant objected at this point, and the trial judge responded to this objection stating, "What's the objection? It's obviously going to be a verdict in favor of the appellant against Jefferson Davis County, so the objection is overruled . . ."

¶26. It is well established in this state that evidence of insurance or lack thereof may not be presented at a trial to show who would have to pay the judgment. *Morris v. Huff*, 238 Miss. 111, 118-19, 117 So. 2d 800, 802-03 (1960); *Snowden v. Webb*, 217 Miss. 664, 675-76, 64 So. 2d 745, 750 (1953). This Court has stated, ". . . it may not be conveyed to the jury that the defendant in the case has no protection by insurance, and if the verdict is against him, he, not the insurance company, must pay it. . . . It would be manifestly unfair to permit a defendant in a damage suit to show that he carried no insurance and whatever verdict rendered would be enforced upon him personally." *Snowden*, 217 Miss. at 675-76, 64 So. 2d at 750 (*quoting Avent v. Tucker*, 188 Miss. 207, 225, 194 So. 596, 602 (1940)). In *Snowden*, we held that it was improper and prejudicial for the defense counsel to tell the jury that any verdict rendered for the plaintiff would have to be paid out of the defendant's wages. As previously noted, then existent Miss. Code Ann. § 19-7-8 directed that no attempt shall be made at the trial of this case to suggest the existence of any insurance which would cover in whole or in part any judgment awarded the plaintiff.

¶27. Similarly, we will not allow the defense attorney in the present case to imply that Jefferson Davis County would have to pay the damages if any damages were assessed. To do so would be asking the jury, who are taxpayers, to hold against themselves. Further, our notions of fairness in this case compel this conclusion since we prohibit the naming of the insurance company as the real party in interest. We find both the defense counsel's statement during his closing argument and the trial judge's response to the plaintiff's objection improper and prejudicial. Therefore, we hold that these statements constitute reversible error.

## V. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.

¶28. It is well settled that our authority to interfere with a jury's verdict is quite limited. *Benson v. State*, 551 So. 2d 188, 192-93 (Miss. 1989). Indeed, a jury verdict will stand unless the verdict illustrates bias,

passion, and prejudice. *Warren v. Ballard*, 241 So. 2d 647, 649 (Miss. 1970). We will set aside a jury's verdict if the jury was improperly instructed, misled, confused, or ignores the weight of the evidence. *McKinzie v. Coon*, 656 So. 2d 134, 142 (Miss. 1995).

¶29. In this case, the jury's verdict was supported by sufficient evidence. There was conflicting testimony as to whether Jackson's car even touched the dirt. Witnesses testified that they had successfully navigated the dirt on the same night. There was conflicting testimony about the visibility of the piles of dirt and how far they extended into the road. There was also testimony that Jackson was driving under the influence and speeding. Indeed, there was conflicting testimony about almost every issue in this case. We have repeatedly held that the jury is responsible for judging the credibility of witnesses and the weight that should be attached to their testimony. *Maiben v. State*, 405 So. 2d 87, 88 (Miss. 1981).

¶30. The jury in this case was presented with the conflicting testimony and made its determination under proper instruction. The jury determined that Jefferson Davis County was not liable for Jackson's death. We find that this decision is supported by the record and is not against the overwhelming weight of the evidence.

## CROSS APPEAL

## I. SOVEREIGN IMMUNITY LAW APPLICABLE ON AUGUST 15, 1989.

¶31. A review of the applicable sovereign immunity law on August 15, 1989, the time of the accident, is in order.

¶32. In 1982, this Court abolished judicially created sovereign immunity in *Pruett v. City of Rosedale*, 421 So. 2d 1046 (Miss. 1982), holding that it was the Legislature's duty to determine the extent of sovereign immunity. The Legislature responded by enacting Miss. Code Ann. § 11-46-1 *et seq.*, a comprehensive torts claim act providing a limited waiver of sovereign immunity. *Hord v. City of Yazoo City,* 702 So. 2d 121, 123 (Miss. 1997). However, Miss. Code Ann. § 11-46-6 stated that the Act was not yet effective and that the common law that existed before *Pruett* would govern until the act became effective. In 1992, in *Presley v. Mississippi State Highway Comm'n*, 608 So. 2d 1288 (Miss. 1992), we held that Miss. Code Ann. § 11-46-6 was unconstitutional because it sought to revive law by reference. Subsequently, we held that *Presley* was to be applied prospectively only. *Robinson v. Stewart*, 655 So. 2d 866, 868 (Miss. 1995).

¶33. This case is a post-*Pruett*, pre-*Presley* cause of action, because it arose on August 15, 1989. Therefore, according to *Robinson*, we follow Miss. Code Ann. § 11-46-6 which directs us to apply pre-*Pruett* common law.

¶34. Pre-*Pruett* common law mandates a finding of whether the act involved is a discretionary function or a ministerial function in determining the liability of county officials individually. *Coplin v. Francis*, 631 So. 2d 752, 753 (Miss. 1994). An official is immune when the act being performed is discretionary. *Coplin*, 631 So. 2d at 753. We have held that maintenance and repair of roads are discretionary functions. *Id.* at 754. Thus, in the present case the individual members of the Board of Supervisors for Jefferson Davis County are immune from suit.

¶35. Next we must consider whether Jefferson Davis County is immune from suit. It is well settled that a county has no liability except as authorized by statute. *Coplin v. Francis,* 631 So. 2d 752, 754 (Miss. 1994)(*citing Leflore County v. Big Sand Drainage Dist.*, 383 So. 2d 501 (Miss. 1980)). As stated

previously, pre-***Pruett*** common law controls this case and dictates that counties are merely political subdivisions of the state and as such are not liable for maintenance of bridges and roads. ***Leflore County v. Big Sand Drainage Dist.***, 383 So. 2d at 502-03 (*citing* ***Brabham v. Board of Supervisors of Hinds County***, 54 Miss. 363 (1877)).

¶36. In ***Mohundro v. Alcorn County,*** 675 So. 2d 848 (Miss. 1996), Mohundro asked this Court to create an exception to sovereign immunity when the governmental entity causes the hazard. ***Mohundro***, 675 So. 2d at 852-53. We stated in ***Mohundro*** that if a county official ". . . acted with such gross neglect or callous indifference to the safety of Mohundro and the public as a whole such that his conduct may be fairly described as constructively intentional, he is not entitled to immunity." ***Mohundro*** at 854 (emphasis added). The present facts do not give rise to liability under the ***Mohundro*** exception.

## II. DID THE TRIAL COURT ERR IN HOLDING THAT JEFFERSON DAVIS COUNTY'S POLICY WITH UNITED STATES FIDELITY AND GUARANTY COMPANY PROVIDED COVERAGE FOR THE ACCIDENT THAT CAUSED BRYAN WADE JACKSON'S DEATH?

¶37. At the time this cause of action arose, then existent Miss. Code Ann. § 19-7-8 provided that a county board of supervisors was authorized to purchase automobile liability insurance, that the county's sovereign immunity was waived to the extent of the coverage of the liability insurance, and that a judgment creditor had recourse only to the proceeds or right to proceeds of such liability insurance. Here, the Jefferson Davis County Board of Supervisors purchased automobile liability insurance from U.S.F.&G. The U.S.F.&G. policy provided insurance coverage for those injuries resulting from "ownership, maintenance, or use" of a county automobile. U.S.F. &G. now contends that if Jackson's accident was a result of the county's negligence then the negligence was in areas other than the "ownership, maintenance, or use" of a county automobile. Thus, they claim that their policy does not cover Jackson's accident.

¶38. The trial court, not the jury, must determine the meaning and effect of an insurance contract if the contract is clear and unambiguous. ***Overstreet v. Allstate Ins. Co.***, 474 So. 2d 572, 575 (Miss. 1985). Further, if the language in an insurance contract is clear and unambiguous, then the court should construe it as written. ***Lowery v. Guaranty Bank & Trust Co.***, 592 So. 2d 79, 82 (Miss. 1991).

¶39. In this case, the language in the U.S.F.&G. policy states that it will pay for bodily injury which results from "the ownership, maintenance, or use of a covered 'auto.'" Since it is obvious that the plaintiff's injuries did not result from the ownership and maintenance of the dump truck covered by the policy, the issue is whether the plaintiff's injuries were a result of the *use* of the dump truck.

¶40. When a policy insures an automobile for the "use" of the automobile, the chain of causation between the use of the automobile and the injury must be direct. ***National Mut. Cas. Co. v. Clark***, 193 Miss. 27, 7 So. 2d 800, 803 (1942). We will not extend coverage if the use of the automobile is within the line of causation, but is distinctly remote. ***Merchants Co. v. Hartford Accident & Indem. Co.***, 187 Miss. 301, 188 So. 571 (1939).

¶41. The facts in the present case place it squarely under our previous decision in ***Merchants***. In ***Merchants***, a delivery truck belonging to the Merchants Company ran off a highway into a ditch. ***Merchants***, 187 Miss. at 306, 188 So. at 571. Large poles were used to remove the truck from the ditch, after which the truck driver drove away, leaving the poles on the highway. ***Id***. That night a car traveling down the highway struck the poles, severely injuring the driver. ***Id***. The driver was awarded a judgment

against the Merchants Company, which was covered by an automobile liability policy with St. Paul Mercury Indemnity Company containing the following language of agreement by St. Paul:

"To pay on behalf of the Insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages *** because of bodily injury *** sustained by any person or persons, *caused by accident and arising out of the ownership, maintenance or use of the automobile*."

*Merchants*, 187 Miss. at 306-07, 188 So. at 571 (emphasis added). We held:

Our conclusion, under a policy such as is here before us, is that where a dangerous situation causing injury is one which arose out of or had its source in, the use or operation of the automobile, the chain of responsibility must be deemed to possess the requisite articulation with the use or operation until broken by the intervention of some event which has no direct or substantial relation to the use or operation,-which is to say, that the event which breaks the chain, and which, therefore, would exclude liability under the automobile policy, must be an event which bears no direct or substantial relation to the use or operation; and until an event of the latter nature transpires the liability under the policy exists.

*Merchants*, 187 Miss. at 309, 188 So. at 572. We found that the failure to remove the poles from the road was not an intervening cause of the accident under this definition, so there was liability under the St. Paul insurance contract. *Id*.

¶42. Similarly, we find that the county employees' failure to remove the dirt piles or to maintain the road after the dump truck transported the dirt was not so remote as to bear "no direct or substantial relation to the use or operation" of the dump truck in this case. There was no intervening cause here to break the chain of responsibility. As a result, we find that Jackson's accident is covered by the U.S.F.&G. policy. The trial court did not err in refusing to dismiss the case against U.S.F.&G.

## CONCLUSION

¶43. We find that the blood and urine test results of the decedent were properly admitted into evidence and that all jury instructions were proper. We also hold that the trial court was correct in denying the plaintiff's motion to name U.S.F.&G. as a real party in interest, and in finding that the jury verdict was not against the overwhelming weight of the evidence. However, the trial judge did err when he overruled the plaintiff's objection to the statement of defense counsel made during closing argument. Jackson's accident is covered by the U.S.F.&G. Policy, and Jefferson Davis County's immunity is waived to the extent of that coverage. As a result, we reverse the judgment of the trial court and remand this case to the Jefferson Davis County Circuit Court for a new trial. In all other respects we affirm the judgment below.

¶44. **ON DIRECT APPEAL: AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

**ON CROSS APPEAL: AFFIRMED.**

**PRATHER, C.J., BANKS AND WALLER, JJ., CONCUR. McRAE AND COBB, JJ., CONCUR IN RESULT ONLY. MILLS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY SMITH, J. PITTMAN, P.J., NOT**

**PARTICIPATING.**


**MILLS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**


¶45. As author of the former majority opinion in this cause, I do not disagree with most of the findings in the new opinion. However, I suspect that the jury in this case probably reached the right result the first time, and will likely again so conclude.

¶46. Despite the expansive liability created by *Merchants Co. v. Hartford Accident and Indem. Co.*, 187 Miss. 301, 188 So. 571(1939), I believe the jury likely found that the uncontradicted proof that Jackson's blood alcohol level of 0.17% was an intervening cause negating any liability established by the much contested evidence of whether Jackson's car in fact contacted any dirt spilled on the road by the county dump truck. I would not blindly follow *Merchants* in the instant case but would find as a matter of law that the intoxication of the driver was an intervening cause sufficient to break the chain of responsibility.

¶47. Our tort law recognizes that an intervening cause may in fact negate the causal link to the earlier misfeasance or negligence. *United Services Auto. Ass'n*, 698 So. 2d 96, 100 (Miss. 1997). In this case, the proof was conclusive that Bryan Wade Jackson had an accident shortly after midnight and that his blood alcohol level was 0.17%.

¶48. I also differ with language in the majority opinion finding that "Jackson's accident is covered by the U.S.F.&G. Policy, and Jefferson Davis County's immunity is waived to the extent of that coverage". I do not disagree, under *Merchants*, that the policy covers Jefferson Davis County. However, I believe the better view would be that the County's immunity is waived, subject to any applicable statutory exemptions or immunities, to the extent of coverage.

**SMITH, J., JOINS THIS OPINION IN PART.**