# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 1998-CA-01720-COA

ANGIE JONES                                                                        APPELLANT

v.

UNITED STATES FIDELITY AND GUARANTY COMPANY AND CHASITY
BURNHAM MCQUEEN                                                                    APPELLEES

DATE OF JUDGMENT:                09/22/1998
TRIAL JUDGE:                     HON. ROBERT G. EVANS
COURT FROM WHICH APPEALED:       SIMPSON COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:         JOSEPH E. ROBERTS JR.
                                 CRYMES MORGAN PITTMAN
ATTORNEYS FOR APPELLEES:         WALKER R. GIBSON
                                 VICTOR DONALD HUNT
                                 JAMES R. MOORE JR.
                                 CHARLES GREGORY COPELAND
                                 MICHAEL W. BAXTER
NATURE OF THE CASE:              CIVIL - PERSONAL INJURY
TRIAL COURT DISPOSITION:         JUDGMENT IN FAVOR OF MCQUEEN
DISPOSITION:                     AFFIRMED - 02/27/2001
MOTION FOR REHEARING FILED:      3/13/2001; denied 5/22/2001
CERTIORARI FILED:                6/5/2001; granted 8/2/2001
MANDATE ISSUED:

   EN BANC.

   PAYNE, J., FOR THE COURT:

## PROCEDURAL HISTORY

¶1. Angie Jones filed a complaint in the Smith County Circuit Court against United States Fidelity and Guaranty Company (USF&G) and Chasity Burnham McQueen on December 29, 1994, for injuries sustained in a car accident which occurred on January 16, 1988. McQueen was the driver in the one-car accident. Venue was transferred to Simpson County on June 26, 1996, and a trial was held before a jury from September 14-16, 1998. The jury returned a verdict for USF&G and McQueen. Jones filed a motion for a new trial or in the alternative for J.N.O.V., which was denied. Jones then filed this appeal. Finding no merit in her claim, we affirm the decision of the Simpson County Circuit Court.

## FACTS

¶2. In this case, McQueen was driving a vehicle in which Jones was a passenger. At the time of the accident, in 1988, Jones was fifteen years old and McQueen was sixteen years old. McQueen testified that as she entered a curve she hit some loose asphalt or gravel, causing her to lose control of the vehicle and skid into an embankment. The car was damaged, but both occupants climbed out of the car on Jones's side. They then began to walk toward McQueen's mother's house. The two were picked up by friends and transported to the local emergency room where they were treated and released in under fifty minutes.

¶3. Six months after the accident, Jones obtained some medical treatment and was diagnosed with anxiety. Five years later, in 1993, Jones started seeing a psychiatrist and psychologist in order to treat her panic attacks, which were brought on by a fear of loud noises, crowds and bright lights. Jones filed suit against McQueen on December 29, 1994, alleging that McQueen's negligence caused the accident and caused Jones's personal injuries. Jones also sued her father's under-insured motorist carrier, USF&G, claiming that her damages exceeded McQueen's $25,000 insurance policy limits.

## ISSUE PRESENTED

## STANDARD OF REVIEW

¶4. Jones presented one issue in this case:

> **WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN REFUSING TO GRANT PEREMPTORY INSTRUCTIONS, WHEN THE DEFENDANT ADMITTED THAT SHE WAS NEGLIGENT AS A MATTER OF LAW.**

According to *Steele v. Inn of Vicksburg*, 697 So. 2d 373, 376 (Miss. 1997), the standard of review testing sufficiency of the evidence by motions for directed verdicts, peremptory instructions, and motions for J.N.O.V. is as follows:

> [T]his court will consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence. If the facts so considered point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render . . . . The above standards of review, however, are predicated on the fact that the trial judge applied the correct law.

A motion for new trial deals with the weight of the evidence. The standard of review for testing the weight of the evidence by a motion for new trial is stated in *McClain v. State,* 625 So. 2d 774, 778-81 (Miss. 1993):

> Matters regarding the weight and credibility of the evidence are to be resolved by the jury . . . .

> Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion . . . .

(citations omitted).

## DISCUSSION OF ISSUE

¶5. At the conclusion of the trial, Jones presented a number of jury instructions, including two which are the subjects of this appeal. One jury instruction stated:

> P-3. You are instructed that it is your sworn duty in this case to return a verdict for the Plaintiff.

The other instruction stated:

> P-6. The Court instructs you that Chasity Burnham [McQueen] was guilty of negligence in the operation of her motor vehicle, as a matter of law, and if you find from a preponderance of the evidence that such negligence either proximately caused or proximately contributed to the accident in question and the injuries sustained by the Plaintiff therein, then it is your sworn duty to return a verdict for the Plaintiff.

Jones argues that the court erred in allowing the issue of negligence to go to the jury. She claims that McQueen admitted to speeding and to not slowing down as she approached the curve. Jones further argues that everyone with knowledge testified that McQueen violated the law.

¶6. Jones contends that the court has stated on many occasions that one who speeds is negligent as a matter of law. *See Bush Const. Co. v. Walters*, 250 Miss. 384, 392;164 So. 2d 900, 903 (1964) (Instruction is proper which states that if driver was exceeding speed limit prior to accident, then such speed constitutes negligence.) Additionally, Miss. Code Ann. § 63-3-505 states that a driver must slow his vehicle when approaching and driving through a curve. Jones claims that a violation of this statute is negligence *per se*, and that the court, therefore, should have allowed her to instruct the jury that McQueen was negligent as a matter of law. She cites *Munford, Inc. v. Peterson*, 368 So. 2d 213, 217 (Miss. 1979), which states, "When a statute is violated, the injured party is entitled to an instruction that the party violating the statute is guilty of negligence, and, if that negligence proximately caused or contributed to the injury, then the injured party is entitled to recover." Jones also cites *Jackson v. Daley*, 739 So. 2d 1031, 1036 (¶17) (Miss. 1999), which held that "[w]hen a party is negligent as a matter of law, the trial court must so instruct the jury. . . . Failure to instruct the jury of negligence as a matter of law is reversible error."

¶7. Jones contends that the trial court abused its discretion by refusing her jury instructions and committed reversible error by denying her motion for a new trial. She argues that a new trial may be granted "when the jury has been confused by faulty jury instructions." *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So. 2d 129, 132 (Miss. 1989). The Mississippi Supreme Court explained that:

> [I]t is error for a court to grant instructions which are likely to mislead or confuse the jury as to the principles of law applicable to the facts in evidence. . . . By granting an instruction which the jury could have interpreted as allowing them to ignore the peremptory instruction on liability, the trial court reversibly erred.

*McCary v. Caperton*, 601 So. 2d 866, 869 (Miss. 1992). However, in *McCary*, the erroneous instruction concerned the form of the jury's verdict and gave the impression that the jury could ignore the peremptory instruction that the accident occurred as a result of the negligence of the defendant. No peremptory instruction was allowed in the case at hand.

¶8. Jones argues that allowing the jury to consider the question of liability was reversible error. Jones

contends that the violation of § 63-3-505, in and of itself, mandates that a peremptory instruction be given. However, the statute does not explicitly say that a peremptory instruction should be given. This section states as follows:

> The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic. All trucks, or truck-trailer combinations and passenger buses shall be required to reduce speed to forty-five miles per hour during inclement weather when visibility is bad.

Miss. Code Ann. § 63-3-505. The Mississippi Supreme Court has stated that the admission by a defendant motorist of failing to reduce her speed on approaching an intersection (one of the situations covered in this section of the code) would only entitle the plaintiff to an instruction that the defendant's failure to reduce her speed was negligence, and that if such negligence caused or contributed to the accident, then the plaintiff would be entitled to a verdict against her. *Richardson v. Adams*, 223 So. 2d 536, 537 (Miss. 1969). However, the *Richardson* court also stated that the admission is not sufficient ground to support a directed verdict for the plaintiff on the basis of the contention that the defendant motorist was in violation of this section and therefore negligent as a matter of law. *Id*. Additionally, the court in *Shaw v. Phillips*, 193 So. 2d 717 (Miss. 1967), held that evidence that a motorist approached an intersection without reducing speed in violation of this section was sufficient to *submit to the jury* the question of whether he was guilty of any negligence which proximately caused or contributed to the accident.

¶9. Jones's instruction P-3 is effectively a directed verdict and would not be allowable under the holding in *Richardson*. The instruction in Jones's P-6 might have been allowable if McQueen admitted she was speeding, as Jones contends; however, despite Jones's insistence that McQueen admitted speeding, this question is disputed. Under the holding in *Shaw*, even if the evidence shows that McQueen was speeding, the question of negligence was proper for the jury, contrary to Jones's contention.

¶10. The speed limit in the area of the accident was 35 mph, and the record shows that McQueen one time estimated her speed as *around* 35 to 40 miles per hour, and another time as *between* 35 to 40, each time stating that it was hard for her to remember. McQueen testified that she did not recall applying the brakes as she entered the curve. Jones contends that on cross McQueen positively said she did not slow down upon entering the curve. The testimony referred to was as follows:

> Q. Okay, And just so I'll be straight on what your testimony is, Ms. McQueen, you never slowed down before you entered the curve?

> A. No, sir. I don't recall applying my brakes before I entered the curve.

Jones argues that "no" still means "no." However, McQueen's statement, on its face, may be interpreted as meaning that the attorney was restating her answer incorrectly. Without the benefit of hearing McQueen's inflection or seeing her demeanor when making this statement, McQueen's intended meaning may not be ascertainable. Jones argues that nothing can be read into this response; however, this is the type of situation and reason for which trial courts and juries are given deference.

¶11. Despite Jones's contentions that McQueen's testimony was that she failed to obey the proper speed limit and failed to slow her car as she approached the curve, McQueen said repeatedly that she did not feel

like she was speeding. As the trial court stated, if McQueen was driving at 35 mph, she was not speeding.

¶12. The officer who investigated the accident did testify from his report, taken ten years prior to trial, that McQueen's speed at the time of the accident was 40 miles per hour. McQueen points out that the officer was not a witness to the accident nor did he have an independent recollection of the accident. Jones was the only witness to the accident other than McQueen, but Jones never testified as to a numerical figure for McQueen's rate of speed. Because of this factual dispute, McQueen and USF&G argue that the trial court correctly denied all motions for directed verdict and peremptory instructions. The joint appellees cite *Sheilds v. Easterling*, 676 So. 2d 293, 295 (Miss. 1996), in which the court held that determining negligence and whether or not speed was a factor in causing the accident were questions for the jury to resolve. McQueen and USF&G argue further that the issue of speed is one for a jury to determine. In *Upchurch v. Rotenberry*, 761 So. 2d 199 (Miss. 2000), the court affirmed the jury verdict that the driver in a one-car accident was not at fault when the passenger was killed as a result of the accident. The plaintiff's expert testified that the vehicle was traveling at 60 mph in a 55 mph zone, and the defendant's expert testified that she was going 42 - 50 mph. The court held that as the driver was presented with a sudden emergency, she did not act improperly and she exercised the care a reasonably prudent and careful driver would use under the circumstances. The court also noted that this was a perfect example of a "he said, she said" case. *Id*. at ¶7.

¶13. The appellees argue that foreseeability was also an issue in this case. In *Rolison v. City of Meridian*, 691 So. 2d 440, 444 (Miss. 1997), the court cited case law from 1933 in which the court held that "[f]ailure to anticipate remote possibilities does not constitute negligence." The court also stated that in order for a person to be liable, "the act must be of such character and done in such a situation, that the person doing it should reasonably have anticipated that some injury to another will probably result therefrom, but . . . is not bound to a prevision or anticipation which would include an unusual, improbable, or extraordinary occurrence, although such happening is within the range of possibilities." *Id*. McQueen testified that she had driven in the subject curve several times and that she was not driving in a different manner than on previous occasions. She testified that she hit loose asphalt gravel in the road and argues that this was not foreseen as the gravel was the same color as the road. The appellees argue that McQueen had no duty to foresee the accident under the *Rolison* holding.

¶14. The appellees additionally argue that jury instructions "must be read as a whole when reviewing them on appeal. . . . The jury is presumed to have followed the trial court's instructions." *Sentinel Industrial Contracting Corp. v. Kimmins Industrial Service Corp*., 743 So. 2d 954, 968 (Miss. 1999). In *Brown v. Mississippi Transp. Com'n*, 749 So. 2d 948, 961 (Miss. 1999), the court stated:

> This court's standard of review in reviewing jury instructions is as follows: In determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.

(citations omitted). McQueen and USF&G point out that by Jones's instruction P-4, the jury was instructed on the preponderance of the evidence standard and the weight and credibility to attach to the evidence. In P-5, Jones defined negligence and what would constitute negligence. In P-7, Jones discussed McQueen's duty to exercise ordinary and reasonable care, the duty to keep her vehicle under proper control, negligence and proximate cause. In P-8, Jones again addressed negligence and proximate cause along with

the duty to maintain a reasonable and proper lookout. In P-9, Jones discussed speed and that if McQueen was operating her vehicle at a speed greater than was safe under the circumstances, she was negligent and Jones should receive a favorable verdict if that negligence was a sole proximate cause or proximate contributing cause to the accident.

¶15. Jones's instruction P-14 told the jury that if they found from a preponderance of the evidence that McQueen failed to decrease her speed when approaching and going around a curve, then she was negligent. The jury was also instructed to find whether or not such negligence, if it existed, was the sole proximate cause or a proximate contributing cause to the accident. The appellees cite *Turner v. Turner*, 524 So. 2d 942, 945 (Miss. 1988), in which the trial court correctly refused to grant a peremptory instruction even though Turner failed to apply her brakes as she entered an intersection. The *Turner* court held that all that is required of a driver is to use reasonable care under the circumstances then and there existing, thus the issues of speed, negligence and causation were required to go to the jury. *Id.* The *Turner* court also held that a directed verdict or a peremptory instruction, or a JNOV, based on the subject statute, is proper only when there is uncontroverted evidence supporting such. *Id.* at 944.

¶16. McQueen and USF&G contend that every conceivable theory of negligence was put forth in Jones's instructions presented to the jury. However, McQueen also instructed the jury on negligence and proximate cause in D-7. The appellees conclude that if there was error in not allowing Jones's additional instructions, particularly P-6, it was harmless error.

¶17. The appellees argue that "[w]hen contradictory testimony exists, this court will 'defer to the jury, which determines the weight and worth of testimony and credibility of the witness at trial.'" *Wallace v. Thornton*, 672 So. 2d 724, 727 (Miss. 1996). The Mississippi Supreme Court has also held that it will draw in favor of the appellee all reasonable inferences which flow from the testimony given, and the court will assume that the jury drew every permissible inference from the evidence offered in the favor of the appellee. *Barrett v. Parker*, 757 So. 2d 182, 186 (Miss. 2000); *Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n*, 560 So. 2d 129, 131 (Miss. 1989).

## CONCLUSION

¶18. McQueen estimated her speed around 35 to 40 mph, but contended that she did not believe she was speeding. Her response to the question of whether she slowed down before entering the curve was, "I do not recall applying my brakes before I entered the curve." In that slowing down can be accomplished by letting off the gas, as opposed to braking only, her response is not necessarily proof that she did not slow down. This appears to be, as the trial judge stated, "a classic jury question, specifically, one on credibility. . . ." Therefore, it was proper to submit the question of liability to the jury, and to deny Jones's jury instruction P-3. It was also proper to deny Jones's jury instruction P-6, especially in viewing as a whole all the jury instructions submitted. The judgment of the Simpson County Circuit Court, therefore, is affirmed.

¶19. **THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED AGAINST THE APPELLANT.**

> **McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., IRVING, J., CONCUR. LEE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, CHANDLER, MYERS, AND THOMAS, JJ.**

LEE, J., DISSENTING:

¶20. With respect for the opinion of the majority, I must dissent. The majority affirms the trial court's refusal to grant peremptory instructions, stating this case to be a "classic jury question." I disagree. To the contrary, I find no question. On cross-examination, the appellee testified as follows:

Q: If the speed limit is 35 and you are going between 35 and 40, then you are going over the speed limit, correct?

A: That's correct, but I don't feel like I was speeding.

. . . .

Q: Okay. And just so I'll be straight on what your testimony is, Ms. McQueen, you never slowed down before you entered the curve?

A: No, sir. I don't recall applying my brakes before I entered the curve.

. . . .

Q: And you were going 35 to 40 miles an hour at the time you hit the gravel, which is in the curve?

A: Yes, sir.

¶21. How can McQueen's testimony be any clearer? Unlike the majority, I do not interpret McQueen's admission that she was traveling at a speed of 35 to 40 miles per hour to mean that she was doing less than 35 miles per hour.

¶22. The majority states the officer (i.e., Officer Walker) who investigated the accident testified from his report, taken ten years prior to trial, that McQueen's speed at the time of the accident was 40 miles per hour. The majority further states that McQueen argues that the officer was not a witness to the accident nor did he have an independent recollection of the accident. Nonetheless, unlike the majority, I find the fact that the report was taken ten years ago to only add credibility to its contents. I state this because the report was made at the time of the accident, and the officer's notes reflected what he was told by McQueen, the driver involved in the accident.

¶23. When asked about the accident, Officer Walker testified:

Q: And what was the speed zone?

A: The speed zone was 35.

. . . .

Q: And so, was Ms. Burnham's (McQueen's) vehicle exceeding the speed limit at the time of the accident?

A: According to her, 40 miles an hour. The speed zone was 35.

What better testimony than Officer Walker's notes derived from McQueen's statement made at the time of

the accident?

¶24. Miss. Code Ann. § 63-3-505 (Rev. 1996) states:

> The driver or operator of any motor vehicle must decrease speed when approaching and crossing an intersection, when approaching and going around a curve, when approaching a hill crest, when traveling upon any narrow or winding roadway, or when special hazard exists with respect to pedestrians or other traffic. All trucks, or truck-trailer combinations and passenger buses shall be required to reduce speed to forty-five miles per hour during inclement weather when visibility is bad.

¶25. The Mississippi Supreme Court has clearly stated "[w]hen a party is negligent as a matter of law, the trial court must so instruct the jury." *Jackson v. Daley*, 739 So. 2d 1031, 1036 (¶17) (Miss. 1999). And, that "[f]ailure to instruct the jury of negligence as a matter of law is reversible error." *Id*.

¶26. McQueen has consistently stated that her speed was 35 to 40 miles per hour. Would the majority's conclusion have been different if McQueen had testified she was driving between 35 and 60 miles per hour? Speeding is speeding! There is nothing in the record that says any different.

¶27. On further questioning, McQueen testified:

> Q: Okay. How fast were you going?
>
> A: It's hard for me to remember, but I believe I was going around 35 to 40 miles per hour.
>
> . . . .
>
> Q: Before you started into the curve, how fast were you going?
>
> A: Like I said, I mean it's hard for me to remember. I would say between 35 and 40.
>
> . . . .
>
> A: I feel that I wasn't speeding. I've been on that road several times at the same speed -- I mean-- I feel like that -- I mean -- I don't feel like I was doing anything wrong.

¶28. In these responses, McQueen has only stated the age old response given to officers by drivers when stopped for a speeding violation, that is she did not feel like she was speeding. When questioned by officers, drivers frequently respond that they do not think or realize that they were speeding. That is understandable. Few realize they are driving as fast as they are in today's modern automobiles. McQueen never denied she was speeding. In fact, she repeatedly admitted it. She merely stated she did not feel like she was speeding.

¶29. If the speed limit was 35 miles per hour, then 35 to 40 miles per hour must be greater than 35, not less. McQueen was very straight forward and consistent in her answers. Nowhere in the record has McQueen stated that she was doing a speed other than between 35 and 40 miles per hour. Either McQueen was speeding or she was not. McQueen said she was. What could be clearer? There is no dispute. Instruction P-6 should have been granted. Therefore, I respectfully dissent.

**BRIDGES, THOMAS, MYERS AND CHANDLER, JJ., JOIN THIS SEPARATE**

**WRITTEN OPINION.**